**BRISTOL–MYERS SQUIBB COMPANY, Relator,**

v.

**The Honorable Patricia HANCOCK, Judge, 113th Judicial District, Harris County, Texas, Respondent.**

No. 14–96–00455–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 16, 1996.

---

918

Charles W. Lyman, Carla Powers Herron, Peter E. Strand, Houston, for relator.

Hartley Hampton, Priscilla D. Walters, William Hardy Young, Houston, for respondent.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Bristol–Myers Squibb Company ("Bristol–Myers") seeks issuance of a writ of mandamus directing Judge Patricia Hancock to order production of patient information by the real party in interest, Dr. Richard Levine. Although the competing interests between parties' rights to discovery and patients' rights to privacy present a close issue in this proceeding, for the reasons set forth below, we deny the petition for writ of mandamus.

Dr. Levine is one of sixteen plastic surgeons who have sued Bristol–Myers and several other defendants under various theories of recovery for injury to professional reputation, mental anguish, loss of income, and punitive damages in connection with the manufacture and sale of breast implants. The plaintiffs allege that the defendants misrepresented to the plastic surgery community that extensive research had been performed on the implants which proved them to be safe, while concealing their knowledge of serious health questions associated with the products.[1]

According to Dr. Levine, each plaintiff's case was to be tried separately in the trial court, and his was selected to be tried first. The defendants sought to compel discovery of the identity of Dr. Levine's patients and

---

1. According to Bristol–Myers, there are more than 50 such lawsuits currently on file in the State.

copies of their medical records. Dr. Levine objected to this discovery on the basis of the physician-patient privilege. *See generally* TEX.R.CIV.EVID. 509.[2] Bristol–Myers asserted that either the information was within an exception to the privilege or the privilege was waived pursuant to the "offensive use" doctrine.[3] After reviewing a portion of the requested medical records *in camera,* the trial court entered an order denying this discovery without stating the basis therefor. Bristol–Myers seeks a mandamus directing that this discovery be allowed.

■ Mandamus issues only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Such a restriction on mandamus is necessary to preserve orderly trial proceedings and prevent constant interruption of the trial process by appellate courts. *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex. 1994). To show an abuse of discretion, the relator must establish that the trial court (a) could reasonably have reached only one decision in ruling on a fact issue or matter committed to the trial court's discretion, and failed to do so, or (b) failed to correctly determine what the law is or apply it to the facts. *Walker,* 827 S.W.2d at 840.

■ In a discovery context, situations in which a party will not have an adequate remedy on appeal from an erroneous ruling of a trial court include those where (1) the appellate court would not be able to cure the trial court's error,[4] (2) a party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's error, or (3) the reviewing court will be unable to evaluate the effect of a denial of discovery because the unproduced documents will not be part of the appellate record. *Id.* at 843–44. In the second situation, it is not enough to show merely the delay, inconvenience or expense of an appeal. *Id.* at 843. Instead, the relator must establish the effective denial of a reasonable opportunity to develop the merits of his case, *i.e.,* denial of discovery going to the heart of his case, such that a trial of the case without it would be a waste of judicial resources. *Id.*

The decision whether to grant mandamus in this case is, in turn, affected by whether the requested discovery is subject to the physician-patient privilege, and, if so, whether assertion of that privilege in this case falls within the "offensive use" doctrine.

■ As a general rule, confidential communications between a physician and patient relative to or in connection with any professional services rendered by the physician to the patient are privileged and may not be disclosed. TEX.R.CIV.EVID. 509(b)(1). This privilege may be claimed by the patient or his representative, but may be claimed by the physician only on behalf of the patient. *Id.* 509(c)(1), (2). The bases for the privilege are to encourage the full communication needed for effective medical treatment, and to prevent unnecessary disclosure of highly personal information to maintain privacy. *R.K. v. Ramirez,* 887 S.W.2d 836, 840 (Tex. 1994).

■ However, exceptions to the physician-patient privilege exist where, among other things, the communication is relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as part of the party's claim or defense.

2. However, as to the identities and medical records of patients who have filed suit against Dr. Levine for damages associated with breast implants, Dr. Levine does not dispute that any physician-patient privilege has been waived. As to other patients, the record does not reflect that any have voluntarily consented to waive the privilege.

3. *See Texas Dep't of Public Safety Officers Ass'n v. Denton,* 897 S.W.2d 757, 761 (Tex.1995); *Republic Insurance v. Davis,* 856 S.W.2d 158, 163 (Tex.1993); *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 107 (Tex.1985).

4. This occurs, for example, when the trial court orders (a) disclosure of privileged information which will materially affect the rights of the aggrieved party, (b) disclosure of trade secrets without adequate protection of confidentiality, or (3) production of irrelevant or duplicative documents which amounts to harassment or imposes a burden on the producing party which is far out of proportion to any benefit that may obtain to the requesting party. *Walker,* 827 S.W.2d at 843.

TEX.R.CIV.EVID. 509(d)(4). As a result of the 1988 amendments to Rule 509(d)(4), the privilege is terminated whenever *any* party relies upon the condition of a patient as a part of that party's claim or defense, even though the patient is not the party who put his condition in issue or even a party to the case. *R.K.*, 887 S.W.2d at 841, 842. Thus, those amendments abrogate much of the control that patients once exercised over the release of privileged information. *Id.* at 842.

 Nevertheless, the mere fact that a condition is relevant to a claim or defense does not mean that a party thereby *relies* on that condition as part of his claim or defense. *Id.* Instead, a party can be said to rely upon a patient's condition in this sense only if some consequence flows from the existence or non-existence of that condition. *Id.* at 843. A mental condition, for example, is part of a claim or defense if the pleadings indicate that the jury must make a factual determination concerning the condition itself. *Id.*[5] The determination of whether a condition is part of a claim or defense should be made on the face of the pleadings, without reference to the evidence that is allegedly privileged. *Id.* n. 7.

 The offensive use doctrine is independent from and unrelated to the privilege exception under Rules 509(d)(4) and (d)(5). *Id.* at 841. Where a plaintiff invokes the jurisdiction of the courts in search of affirmative relief against a defendant, but attempts on the basis of privilege to deny the defendant the benefit of evidence that would materially weaken or defeat the plaintiff's claims against the defendant, this is an offensive rather than defensive use of the privilege, and lies outside the intended scope of the privilege. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 107 (Tex.1985). In such an instance, where the privilege is being used as a sword rather than as a shield, the privilege may be waived. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163. However, because privileges represent society's desire to protect certain relationships, an offensive use waiver of a privilege should not be lightly found. *Id.* Accordingly, the privilege must be upheld unless all of the following three factors exist. *Id.*

 First, the party asserting the privilege must be seeking affirmative relief. *Id.* Where, for example, the party seeks only a declaratory judgment which is defensive in nature, this requirement is not met. *Id.* at 164. Conversely, where the party asserting the privilege seeks damages as part of his claims, this element is satisfied. *See Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 761 (Tex.1995). Second, the privileged information must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. *Republic Ins*, 856 S.W.2d at 163. In this regard, mere relevance or a contradiction in position without more is insufficient. *Id.* Instead, the confidential communication must go to the very heart of the affirmative relief sought. *Id.* Thus, for example, information concerning what wrongful acts the defendants committed or how the plaintiff was injured satisfy this requirement. *See Public Safety Officers*, 897 S.W.2d at 762. Third, disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence. *Republic Ins*, 856 S.W.2d at 163.[6]

---

5. Even when a document contains some information meeting this standard, any information in the document not meeting the standard remains privileged and must be redacted or otherwise protected. *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex.1994).

6. Where an offensive use is shown, the party asserting the privilege must elect either to waive the privilege or risk sanctions from the court. *Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 761, 763 (Tex.1995). If that party chooses not to waive the privilege, the sanction imposed should be no more severe than necessary to satisfy its legitimate purposes. *Id.* at 763. In determining an appropriate sanction, the trial court should consider whether the privilege is being asserted out of bona fide concern or merely to avoid discovery, and should weigh the resulting unfairness to the defendant if put to trial without the discovery. *Id.* The trial court may proceed to trial and consider whether any remedies could be imposed during trial if the plaintiff continues to assert the privilege, such as prohibiting the plaintiff from introducing evidence about which he has asserted the privilege. *Id.*

In assessing the application of the physician-patient privilege in this case, we first consider whether a condition of Dr. Levine's patients is part of a claim or defense in the case as reflected on the face of the pleadings. *R.K.*, 887 S.W.2d at 843, n. 7. In this regard, the plaintiffs' eleventh amended petition states the types of actual damages claimed but not their underlying basis:

Because of the conduct of Defendants, Plaintiffs have been damaged and will be damaged in the following particulars:

1. They have suffered injury to their professional reputations;
2. They have been caused to suffer mental anguish;
3. They have suffered a loss of income;
. . .

Nor was a copy of Bristol–Myers' answer found among the exhibits filed in this proceeding.

However, further insight into the basis of Dr. Levine's damage claims can be gained from other materials he filed. In an affidavit filed in opposition to producing his patients' medical records, Dr. Levine stated, among other things, that those records contained no information about patients' lost confidence in him or the plastic surgery profession or about explants performed on his former patients by other physicians. Similarly, in a preliminary report, Kenneth Miller, an expert witness designated by the plaintiffs to testify regarding economic damages, stated, in part:

Past damages relate to the loss of earnings by the physician plaintiffs as a result of their loss of the breast implant portion of their business, their loss of earnings from other procedures they may have performed on breast implant patients, their loss of earnings from referrals as a result of alienation of former patients and referring physicians, their loss of earnings as a result of having to spend time visiting with, counseling, and dealing with the fears of former breast implant patients, and by the additional cost of operating the practice caused by responding to requests for patient records by former patient plaintiffs, including the administrative burden caused by the breast implant litigation.

Bristol–Myers thus argues that discovery of the identities of Dr. Levine's patients and their medical records and an opportunity to interview them are needed to establish: (1) the portion of Dr. Levine's practice devoted to breast implants, (2) the extent to which he advised his breast implant patients concerning the alleged risks of those implants, (3) whether his patients have been dissatisfied with or complained about their breast implants, (4) whether the patients have actually suffered any physical or mental injuries, (5) whether any such injuries or complaints resulted from breast implants rather than other causes, (6) whether patients had their implants removed, (7) whether the implants used with each patient were produced and sold by Bristol–Myers or another manufacturer, (8) the names of people who referred patients to Dr. Levine, and (9) whether any patients or people who referred them have lost confidence in Dr. Levine and the plastic surgery profession due to concerns about breast implants. Bristol–Myers further contends that, even if the information it seeks is not within an exception to the physician-patient privilege, the privilege has nevertheless been waived by Dr. Levine's offensive use of that privilege.

Relevant evidence is that having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Tex.R.Civ.Evid. 401. From the face of Dr. Levine's petition, and consistent with his affidavit and the preliminary report of his damage expert, Kenneth Miller, the feelings toward Dr. Levine of his patients and people who have referred patients to him would seem to be a significant element of his professional reputation. Similarly, the reasons for those feelings, and any notations in the medical records concerning the brand of implant provided to each patient would appear to be factors affecting causation in this case. Therefore, we see little question that the medical records and testimony of Dr. Levine's patients and the people who referred them would yield information that would make the existence of loss of reputation, loss of income, mental anguish and causation more or less probable than the

lack of such evidence. That evidence is thus clearly probative and relevant to those issues. *See* TEX.R.CIV.EVID. 401.

In addition, it is not apparent how Dr. Levine can sustain his burden of proof, particularly as to causation, without evidence concerning his patients and sources of referrals. Moreover, for purposes of Rule 509(d)(4), whether or not Dr. Levine relies upon the physical and mental condition of his patients' as part of *his* claims, it is difficult to perceive that Bristol–Myers would not rely upon their condition as part of its defense.[7]

Importantly, however, it is up to Dr. Levine to determine how best to prove his case in light of prevailing discovery and evidentiary constraints. Additionally, due to the relatively novel nature of the claims asserted in this case, we cannot reliably predict in advance what other evidence might be introduced at trial by each side,[8] and how the trial judge would likely rule on its admissibility and otherwise conduct trial. Therefore,

we cannot, in advance, *rule out* the possibility that a trial could be conducted in a manner that is fair to Bristol–Myers without the requested information. This uncertainty, combined with the highly private nature of patient information requested, leads us to conclude that a decision to require disclosure of such information can properly be made *in this case* only after a trial has been conducted and, if necessary, the issue brought up on appeal.[9] Because we cannot, therefore, conclude at this stage that the trial court's denial of discovery was necessarily an abuse of discretion or not remediable on appeal, we deny Bristol–Myers' petition for writ of mandamus.

7. Similarly, even if that exception to the physician-patient privilege is not satisfied, it would appear that for purposes of the offensive use doctrine, Dr. Levine is seeking affirmative relief, the requested information could be outcome determinative, and the information is not available to Bristol–Myers from other sources. However, unlike the exception under Rule 509(d)(4) which can be invoked when someone other than the patient puts the patient's condition in issue, we are aware of no authority that a privilege can be waived by offensive use where, as here, the person asserting the privilege is not the one whom the privilege exists to protect.

8. Dr. Levine has implied, for example, that instead of information specifically about his patients, he might rely on community views toward breast implants and plastic surgeons as reflected in public opinion surveys.

9. Bristol–Myers also contends that if discovery of the patient records is not provided by man-

damus, the missing discovery cannot be made part of the appellate record, and the reviewing court would thereby be unable to evaluate the effect of the trial court's error. However, Dr. Levine has acknowledged that the disputed records can be made part of the record on appeal. Moreover, should the privilege ever be determined on appeal not to apply to *any* type of patient information, a determination should then also be made regarding which types of patient information are not privileged. It would then become the responsibility of the trial court to review the patient records *in camera* to determine what portion of the records remain privileged and must be redacted before production. *See R.K.,* 887 S.W.2d at 843. The records reviewed pursuant to that determination would again become part of the appellate record at that time.