In re LaSethia G. **WHITELEY.**

No. 13–02–236–CV.

Court of Appeals of Texas, Corpus Christi.

June 13, 2002.

Ray B. Jeffrey, Heather Tessmer, San Antonio, for relator.

Kevin D. Cullen, Cullen, Carsner, Seerden & Cullen, Victoria, Shannon Robbie Ramirez, Jeffery A. Addicks, Hays, McConn, Rice & Pickering, Houston, for real parties in interest.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

NELDA V. RODRIGUEZ, Justice.

In this original proceeding, relator, La-Sethia G. Whiteley, seeks mandamus relief from an order issued by respondent, the Honorable Robert C. Cheshire, of the 377th District Court of Victoria County, denying Whiteley's motion to compel discovery of non-party medical records by real party in interest, John C. Wright, M.D. We conclude respondent abused his discretion, and conditionally grant the petition for writ of mandamus.

### I. Background

The underlying action is for medical malpractice. Dr. Wright, a physician and

defendant in this lawsuit, performed a total knee replacement on Whiteley. During the surgery, Dr. Wright used the Cave–Rowe technique to resurface the kneecap.[1] Whiteley sued Dr. Wright claiming the total knee replacement failed. Whiteley's motion to compel production of records of non-party medical records of patients on whom Dr. Wright performed the Cave–Rowe procedure was denied.[2] The trial court also denied her motion on rehearing. Whiteley seeks mandamus relief from this discovery ruling.

## II. Standard of Review

 Mandamus is an extraordinary writ and should issue only to correct an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex.1992) (orig.proceeding). The trial court has no discretion to misinterpret or misapply the law. *Id.* at 840. A clear abuse of discretion occurs when the trial court clearly fails to analyze or apply the law correctly. *Id.* Mandamus will not issue when there is an adequate remedy by appeal. *Id.*

## III. Abuse of Discretion

Whiteley contends the trial court abused its discretion when it failed to apply an exception to the physician-patient privilege.

### A. Exception to Physician–Patient Privilege

 Texas Rule of Evidence 509 provides that "[c]onfidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed." TEX. R. EVID. 509(c)(1). However, an exception to the physician-patient privilege applies (1) when the condition is relied upon as part of a party's claim or defense, meaning that the condition itself is a fact that carries some legal significance, and (2) when the records sought to be discovered are relevant to the condition at issue. *Id.* at 509(e)(4); *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex.1994) (orig.proceeding). The privilege is terminated when any party relies on the condition of the patient as part of his claim or defense, "even though the patient has not personally placed the condition at issue, and even though the patient is not a party to the litigation." *Id.* at 842; *see Bristol–Myers Squibb Co. v. Hancock*, 921 S.W.2d 917, 921 (Tex.App.-Houston [14th Dist.] 1996, orig. proceeding).

### 1. Condition Relied on as Defense

 In assessing the application of the exception to the physician-patient privilege, we must first determine whether the condition of Dr. Wright's patients is part of a claim or defense in this case. *R.K.*, 887 S.W.2d at 843. This determination should be made on the face of pleadings, without reference to evidence that is allegedly privileged. *Id.* at 843 n. 7; *Bristol–Myers Squibb Co.*, 921 S.W.2d at 921.

In her original petition, Whiteley asserted Dr. Wright failed to properly perform

---

**1.** The Cave–Rowe technique is a biological resurfacing procedure that involves resurfacing the patella or kneecap with the infrapatellar fat pad, rather than with a patella "button," a prosthetic component supplied by manufacturers of knee prostheses. This procedure forms the basis of the discovery request at issue in this mandamus proceeding.

**2.** On rehearing, Whiteley, narrowing her request, asked the court to order Dr. Wright to produce only records that were easily accessible at Dr. Wright's office. Furthermore, evidence relied on by both parties related to specific records retrievable from Dr. Wright's office. Therefore, we limit our review to those specific records.

medical treatment necessary according to the standards set by the medical profession. Whiteley claimed this alleged breach of duty proximately caused her damages. In his second amended answer, as one of his defenses, Dr. Wright asserted he "would show that he did not fail in any duty owed to [Whiteley] for the reason he acted appropriately under the circumstances at all times." While Dr. Wright's answer provides a general defense to Whiteley's liability claim, it does not provide the underlying basis for that defense.

However, further insight into the basis of Dr. Wright's defense can be gained from other materials filed by Dr. Wright, and from his deposition testimony. *See Bristol–Myers Squibb Co.*, 921 S.W.2d at 922. In response to Whiteley's request for disclosure of legal theories and the factual bases of his defenses, Dr. White responded, "This Defendant's care of the Plaintiff did not fall below the standard of care. Defendant treated Plaintiff reasonably and appropriately. Further, Defendant has performed the procedure in question numerous times without complications." At his deposition, Dr. Wright testified that of the total knee replacements he had performed using the Cave–Rowe technique, only three, including Whiteley's surgery, had failed.[3]

Based on the above, we conclude Dr. Wright is relying on the medical condition of his other patients as the basis of his defense that he has been successful in the use of the Cave–Rowe technique. *See id.* Because of this success, Dr. Wright contends he acted appropriately, satisfying the standard of care and breaching no duty owed to Whiteley. The medical condition of Dr. Wright's patients, the patients on whom he performed the Cave–Rowe technique, is part of his defense in this case. *See R.K.*, 887 S.W.2d at 843 n. 7; *Bristol–Myers Squibb Co.*, 921 S.W.2d at 921–22. Thus, the condition itself is a fact that carries some legal significance. *See R.K.*, 887 S.W.2d at 843. The first prong of the test for application of the exception to the physician-patient privilege has been met. *See id.*

■ We note, however, "[e]ven when a document contains some information meeting this standard [that the condition is part of a claim or defense], any information in the document not meeting the standard remains privileged and must be redacted or otherwise protected." *Bristol–Myers Squibb Co.*, 921 S.W.2d at 921 n. 5. Whiteley has acknowledged the appropriateness of such redaction.[4] Therefore, identifying information and other information not relevant to the condition that is part of Dr.

---

**3.** Furthermore, the record reveals Dr. Wright's counsel affirmatively set out that it was Dr. Wright's intent to use the success of the procedure as a defense in this case. At the motion for rehearing, Dr. Wright's counsel stated "[Dr. Wright] has performed this procedure since he was in residency." He continued by urging, "To deny him the right to say that it's a procedure he uses because it works for him will, basically, give him no defense at all." Furthermore, Dr. Wright's counsel indicated James B. Shook, D.O., a non-suited defendant in this case, would testify that Dr. Wright has had success with this procedure. Dr. Wright's counsel also com-

mented that Whiteley's expert stated he had not heard of the technique so there must be something wrong with it, and that he further admitted if a doctor has a success rate like Dr. Wright says he does, use of the procedure in question would not fall below the standard of care.

**4.** During the rehearing on the motion to compel, Whiteley's counsel commented, "We don't want to invade patient privacy. We're willing to, if they turn over these records, to have them block out patient names, Social Security numbers, anything like that."

Wright's defense must be redacted from the requested medical records.[5]

### 2. Relevant Records

Whiteley also contends the records are relevant to the condition at issue. This is the second prong that must be satisfied before the exception to the privilege will apply. *See R.K.*, 887 S.W.2d at 843.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX. R. EVID. 401. From the face of Dr. Wright's answer, and consistent with his responses, the condition of Dr. Wright's patients on whom he used the Cave–Rowe procedure would be a factor affecting the standard of care in this case and the alleged breach of that standard. Dr. Wright's defense depends on the success rate reflected in his patient's medical records. Whiteley requests the records to determine whether or not Dr. Wright's defense has any factual basis. Therefore, the requested records would yield information that would make the existence of Dr. Wright's defense regarding standard of care and breach of that standard more or less probable than it would be without the evidence. *See id.* The medical records are clearly probative and relevant to these issues. *See id.* The second prong of the test has been met. *See R.K.*, 887 S.W.2d at 843.

We conclude the court abused its discretion when it did not apply the exception to the physician-patient privilege and denied Whiteley's motion to compel production of redacted non-party medical records of Dr.

Wright's patients on whom he used the Cave–Rowe procedure.

### B. Burdensome/Overbroad

Whiteley also contends the trial court abused its discretion because the production of the requested records is not overbroad or burdensome.

The Texas Supreme Court has identified requests as "overbroad" when they encompass time periods, activities, or products that are not relevant to the case at hand. *See In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 181 n. 1 (Tex.1999) (orig.proceeding). The sheer volume generated from a discovery request will not render that request overbroad as a matter of law. *See id.* Trial courts are encouraged to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." TEX. R. CIV. P. 192.4(b). The court is to take into consideration "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.*

Karey Beth Ohrt, Dr. Wright's office manager, testified Dr. Wright performed approximately 200 total knee replacements between 1993 and 2001, 173 as the primary surgeon and the remaining as the assistant surgeon. Although the computer system went back as far as November 1989, Ohrt began her search with 1993 files because Dr. Wright informed her he used the Cave–Rowe procedure on all total knee replacements he had performed since 1993.

---

**5.** Dr. Wright argues that even if redacted, the records should not be produced because of the physician-patient privilege. Dr. Wright relies on *In re Columbia Valley Reg. Med. Ctr.*, 41 S.W.3d 797, 800–02 (Tex.App.-Corpus Christi 2001, orig. proceeding). His reliance is misplaced, however, because no exception to the privilege was asserted in *In re Columbia. Id.* at 799.

By affidavit, Ohrt stated that the production of medical records relating to all patients who have had the Cave–Rowe procedure would be extremely burdensome, based on the amount of time and money that would be expended. Ohrt concluded it would take one employee approximately two months to pull and copy the information, at a cost of approximately $4,300.00, not including employee wages. Later, at her deposition, however, Ohrt explained it would take an average of only two minutes to pull each active file.[6] Locating inactive files[7] would take longer because, at that time, they were stored in boxes off-site and were not organized. Ohrt also testified that on May 8, 2001, they began the process of scanning all inactive files. Thus, once scanned, those files would be accessible by performing a computer search.

■■■■■ Taking into consideration the needs of the case, the parties' resources, the importance of this issue in the litigation, and the importance of the proposed discovery in resolving the issue, we conclude the likely benefit of the proposed discovery of the requested medical records from November 1989 to the present, records that are accessible from Dr. Wright's office, outweighs the burden or expense.[8] *See* TEX. R. CIV. P. 192.4(b). The volume generated from Whiteley's request does not render the request burdensome. *See In re Alford Chevrolet–Geo,* 997 S.W.2d at 181 n. 1. We also recognize that, "[t]o the extent that a discovery request is burdensome because of the responding party's own conscious, discretionary decisions [for example, the unorganized storage of inac-

tive patient records], that burdensomeness is not properly laid at the feet of the requesting party, and cannot be said to be 'undue.'" *ISK Biotech Corp. v. Lindsay,* 933 S.W.2d 565, 569 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding).

■■■■■ Finally, Dr. Wright argues Whiteley's discovery request is merely a fishing expedition. The Texas Supreme Court has emphasized that discovery may not be used as a fishing expedition. *In re Am. Optical Corp.,* 988 S.W.2d 711, 713 (Tex.1998). Discovery requests must not be overly broad, but reasonably tailored to include only matters relevant to the case. *In re Xeller,* 6 S.W.3d 618, 626 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding). With the redactions and time restrictions set out above, we conclude the request is not overly broad, but is reasonably tailored to include only matters relevant to the case. The discovery request at issue cannot be characterized as a fishing expedition. *See In re Am. Optical Corp.,* 988 S.W.2d at 713.

Accordingly, we conclude the trial court abused its discretion to the extent the court's order found the production of redacted medical records of Dr. Wright's patients on whom he performed the Cave–Rowe procedure since November 1989 was burdensome and overbroad.

### IV. Remedy by Appeal

■■■■■ Mandamus will not issue when there is an adequate remedy by appeal. *Walker,* 827 S.W.2d at 842. Remedy by mandamus lies in a trial court's denial of discovery if the denial vitiates or substan-

---

6. An active file was described as the file of a patient who has seen Dr. Wright during the past three years.

7. Inactive files are those records of patients who saw Dr. Wright more than three years ago.

8. Rule 196.3 of the Texas Rules of Civil Procedure requires only that items requested be produced for inspection and copying. *See* TEX. R. CIV. P. 196.3.

tially compromises a party's ability to present a claim or defense. *See id.* at 843. There is no adequate remedy at law if the denied discovery goes to the heart of a party's claim or defense. *See id., In re Colonial Pipeline Co.,* 968 S.W.2d 938, 942 (Tex.1998) (orig.proceeding).

The discovery sought is evidence bearing on the accuracy of Dr. Wright's defensive claim. If Dr. Wright relies on the results of the surgery performed on other patients, it is difficult to perceive that Whiteley would not find it necessary to review those same patient records to counter Dr. Wright's defense. Without production of the requested medical records, Whiteley is effectively prevented from challenging Dr. Wright's defensive claim; she cannot verify or refute Dr. Wright's defense. The denial of the discovery request goes to the heart of the case because the trial court's denial substantially compromises Whiteley's ability to present her claim because she has no way to challenge Dr. White's defense. *See Walker,* 827 S.W.2d at 843; *In re Colonial Pipeline Co.,* 968 S.W.2d at 942. Moreover, the reviewing court would be unable to evaluate the effect of a denial of discovery because the unproduced documents would not be included in the record. *See Walker,* 827 S.W.2d at 843–44. Accordingly, remedy by appeal is not sufficient.

## V. Conclusion

Because the exception to the physician-patient privilege applies and the production of Dr. Wright's redacted records for those patients on whom he performed the Cave–Rowe technique from November 1989 to present is not burdensome or overly broad, we conclude the trial court abused its discretion when it denied Whiteley's motion to compel. Accordingly, we conditionally grant Whiteley's petition for writ of mandamus. If, within ten days of this opinion, the trial court fails to enter an order consistent with this opinion, we will issue the writ.