Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00815-CV

**IN RE NETHERLANDS INSURANCE CO.** and **AMERICA FIRST INSURANCE CO.**

Original Mandamus Proceeding[1]

Opinion by:      Rebecca Simmons, Justice

Sitting:         Catherine Stone, Chief Justice
                 Sandee Bryan Marion, Justice
                 Rebecca Simmons, Justice

Delivered and Filed:   April 8, 2009

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relators Netherlands Insurance Co. and America First Insurance Co., defendants in the

underlying proceeding, filed a petition for writ of mandamus seeking to compel the trial court to

vacate the  October 31, 2008 Order Granting Plaintiff's Amended Motion to Compel to the extent

that it orders the production of medical peer review reports of nonparties.  We conditionally grant

mandamus relief.

---

[1] This proceeding arises out of Cause No. 2008-CI-10929, pending in the 166th Judicial District Court, Bexar County, Texas, the Honorable Martha Tanner presiding.  However, the order relator complains of was signed by the Honorable Peter Sakai, presiding judge of the 225th Judicial District Court, Bexar County, Texas.

## BACKGROUND

Ignacio Zaragosa filed a workers' compensation claim alleging he was in the course and scope of his employment when he was injured in an automobile accident. The adjuster reviewing Zaragosa's claim, Elsa de la Cruz, initially denied Zaragosa's claim because de la Cruz found that Zaragosa was not in the course and scope of his employment and because Zaragosa did not sustain a compensable injury resulting in a disability. Eventually, a doctor gave Zaragosa an impairment rating of 19%, but relators disputed the impairment rating and assessed Zaragosa at 0% impairment. Relators then sought the advice of Dr. Mark Parker and Dr. Radie Perry, both of whom provided peer review reports regarding the 19% impairment rating. Based on the reports of Dr. Parker and Dr. Perry, relators left the impairment rating at 0%. However, the parties eventually entered into a Benefit Dispute Agreement, agreeing to a 19% impairment rating. Subsequently, Zaragosa filed suit against relators, asserting claims for breach of common law and statutory duties of good faith and fair dealing in connection with their handling of Zaragosa's workers' compensation claim. Specifically, Zaragosa claimed he was without temporary income benefits for approximately eight months until his claim proceeded to a hearing before the Texas Department of Insurance, Division of Workers' Compensation (DWC).

In the trial court, Zaragosa sought the production of all peer review reports prepared by Dr. Mark Parker, Dr. Radie Perry, and/or Review Med at the request of Netherlands Insurance Co. for workers' compensation disputes in the past three years. Relators objected to the requests on the basis that they were (1) irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, (2) overbroad and unduly burdensome and harassing, and (3) the production of the

documents would violate the personal and privacy rights of the individuals who are not parties to the lawsuit.

Judge Peter Sakai granted Zaragosa's motion to compel and ordered in part the production of the peer review reports of nonparties "with the understanding that any confidential/privacy information regarding other worker's compensation claimants' names and personal information, such as social security numbers, will be redacted and that the parties will enter into an agreed protective order to prevent the dissemination of these documents for use outside of this lawsuit." Following the entry of the trial court's order, relators filed a motion for reconsideration, contending that the "medical records and private information of other individuals unrelated to plaintiff's case are afforded special protection from disclosure by the rules of evidence, statutes and the Constitution." Relator claimed that medical records and information of nonparties are entitled to almost absolute privilege from disclosure absent consent of those nonparties. After a hearing, Judge Gloria Saldana denied relator's motion for reconsideration. This petition for writ of mandamus ensued.

## DISCUSSION

### A.     Standard of Review

Relators assert the trial court erred in compelling the production of the peer review reports of nonparties. Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

#### 1.     *Adequate Remedy at Law*

A party does not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. *Walker*, 827 S.W.2d at 843; *see also In re Am. Optical*

*Corp.*, 988 S.W.2d 711, 713 (Tex. 1998)(orig. proceeding) (holding, "An order compelling discovery that is well outside the proper bounds is reviewable by mandamus."). "This occurs when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party." *Walker*, 827 S.W.2d at 843 (discussing the disclosure of documents covered by the attorney-client privilege and trade secrets). We conclude relators have no adequate remedy at law because once the peer review reports of nonparties are disclosed, we will not be able to cure any error on appeal.

2.      *Abuse of Discretion*

With respect to the resolution of factual issues or matters committed to the trial court's discretion, we cannot substitute our own judgment for that of the trial court. *Walker*, 827 S.W.2d at 840. Relators must establish that the trial court could reasonably have reached only one decision. *Id.* Even if this court would have decided the issue differently, we cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* However, a trial court has no discretion in determining what the law is or in applying the law to the facts, and a clear failure to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

In making the determination of whether the trial court abused its discretion, we are mindful that the purpose of discovery is "to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed." *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (quoting *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984)). The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a). However, this broad grant "is

limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information." *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990).

**B.    Privilege**

Relators rely on Texas Rule of Evidence 509, the Medical Practice Act (Texas Occupation Code section 159.001 et seq.), and the United States Constitution to support their contention that the medical peer review reports of the nonparties created by Dr. Parker and Dr. Perry are privileged. Texas Rule of Evidence 509(c)(1)-(2) provides:

> (1) Confidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed. (2) *Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed.*[2]

TEX. R. EVID. 509(c)(1)-(2) (emphasis added).

The Medical Practice Act essentially mirrors this language, providing that:

> (a) A communication between a physician and a patient, relative to or in connection with any professional services as a physician to the patient, is confidential and privileged and may not be disclosed except as provided by this chapter.
> (b) *A record of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician is confidential and privileged and may not be disclosed except as provided by this chapter.*
> (c) *A person who receives information from a confidential communication or record as described by this chapter, other than a person listed in Section 159.004 who is acting on the patient's behalf, may not disclose the information except to the extent that disclosure*

---

[2] "(1) A 'patient' means any person who consults or is seen by a physician to receive medical care; (2) A 'physician' means a person licensed to practice medicine in any state or nation, or reasonably believed by the patient to be." TEX. R. EVID. 509(a)(1)-(2).

> *is consistent with the authorized purposes for which the information was first obtained.*

TEX. OCC. CODE ANN. § 159.002(a)-(c) (Vernon 2004) (emphasis added).

We therefore must determine whether the peer review reports of the nonparties that Judge Sakai ordered produced include the "identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician." *See* TEX. R. EVID. 509(c)(2);TEX. OCC. CODE ANN. § 159.002(b). By definition, a medical peer review report "document[s] the objective medical findings and evidence-based medicine that supports the opinion and include[s]: . . . (3) a list of all medical records . . . reviewed by the peer reviewer. . .; [and] (4) a summary of the clinical history." 28 TEX. ADMIN. CODE ANN. § 180.28(a) (2006) (Texas Department of Insurance, Division of Workers' Compensation, Peer Review Requirements, Reporting, and Sanctions). Thus, according to the plain language of rule 180.28(a), a peer review report contains a summary of the patient's medical records.

By example, a review of the peer review report of Zaragosa prepared by Dr. Perry also demonstrates that the peer review reports fall within the confines of Texas Rule of Evidence 509(c)(2) and the Medical Practice Act. *See* TEX. R. EVID. 509(c)(2); TEX. OCC. CODE ANN. § 159.002(b). The report was written by a physician, includes a summary of the original medical records, and includes the identity, diagnosis, evaluation, and treatment of the patient. *See id.* In addition, we conclude that the Medical Practice Act prevents the dissemination of such information because any person, such as Dr. Parker and Dr. Perry, who receives information from a confidential communication or record is forbidden from disclosing the information. *See* TEX. OCC. CODE ANN. § 159.002(c). As a result of the foregoing, we find that the peer review reports of the nonparties fall

squarely within the protections afforded by Texas Rule of Evidence 509 and the Medical Practice Act and are privileged.

In addition, we conclude that peer review reports of the nonparties are within the zone of privacy protected by the United States Constitution because they contain a summary of the nonparties' medical records. *See In re Crestcare Nursing & Rehab. Ctr.*, 222 S.W.3d 68, 73 (Tex. App.—Tyler 2006, orig. proceeding [mand. denied]) (citing *Whalen v. Roe*, 429 U.S. 589, 601 (1977)) (holding "[a]n individual's medical records are within a zone of privacy protected by the United States Constitution"); *In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d 797, 802 (Tex. App.—Corpus Christi 2001, orig. proceeding); *In re Xeller*, 6 S.W.3d 618, 625 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *C.M. v. Tomball Reg'l Hosp.*, 961 S.W.2d 236, 243 (Tex. App.—Houston [1st Dist.] 1997, no writ). As a result of the foregoing, we conclude the trial court abused its discretion in compelling the production of the peer review reports of the nonparties.

## C.    Redaction of Personal Information

Zaragosa contends that the redaction of personal information from the peer review reports is sufficient to protect any privileged medical information of the nonparties. We disagree. The peer review reports of the nonparties do not lose their privileged or confidential status because the identifying information has been redacted. *See Walters v. Columbia/St. David's Healthcare System, L.P.*, No. 03-03-00582-CV, 2005 WL 1240968, *7 (Tex. App.—Austin May 26, 2005, pet. denied) (mem. op.); *In re Christus Health Se. Tex.*, 167 S.W.3d 596, 599-600 (Tex. App.—Beaumont 2005, orig. proceeding) (relying on Texas Rule of Evidence 509 in concluding that the emergency room records of nonparty patients with their identifying information redacted are privileged unless the trial court concludes they fall within an exception to the privilege); *In re Columbia*, 41 S.W.3d at 800

(relying on the Medical Practice Act, Rule 509, and U.S. Constitution in concluding that the labor and delivery records of nonparty patients are privileged, even if the identifying information is redacted); *In re Tenet Healthcare, Ltd.*, No. 12-05-00310-CV, 2006 WL 860076, *2 (Tex. App.—Tyler March 31, 2006, orig. proceeding) (mem. op.) (relying on the Medical Practice Act and Rule 509 in concluding that the operative reports and discharge summaries of nonparty patients are privileged, even if the identifying information is redacted). The redaction of the nonparties' identifying information does not address the privilege as it applies to the diagnosis, evaluation, or treatment of the patient. *See In re Columbia*, 41 S.W.3d at 800. Rule 509 and the Medical Practice Act specifically hold that "[a] record of the identity, diagnosis, evaluation, *or* treatment of a patient by a physician that is created or maintained by a physician is confidential and privileged" and may not be disclosed except as provided by the exceptions in either Rule 509 or the Medical Practice Act. *See* TEX. R. EVID. 509(c)(2); TEX. OCC. CODE ANN. § 159.002(b) (emphasis added). Nowhere in Rule 509 or the Medical Practice Act's list of exceptions to the privilege is there an exception for a record that has the patient's identifying information omitted.[3] *See* TEX. R. EVID. 509(e); TEX. OCC. CODE ANN. §§ 159.003-159.004 (Vernon 2004); *see also Walters*, 2005 WL 1240968 at *7. As a result of the foregoing, we conclude the redaction of the nonparties' identifying information is not sufficient to protect the privileged peer review reports of the nonparties.[4]

---

[3] Neither party has asserted that any exception to Rule 509 or the Medical Practice Act applies.

[4] However, we recognize that in certain cases, redaction of identifying information is appropriate. *See In re Whiteley*, 79 S.W.3d 729, 733-34 (Tex. App.—Corpus Christi 2002, orig. proceeding [mand. denied]). In *In re Whiteley*, the court determined that the exception to physician-patient privilege found in Rule 509(c)(4) applied to the documents sought because the conditions of the patients were relied upon as part of the defendant's defense. *Id.* The court concluded that any identifying information of nonparties and other information not relevant to the condition that was part of the defendant's defense had to be redacted from the requested medical records. *Id.*

**D.    Waiver**

Finally, we address Zaragosa's contention that relators waived their objection that the medical peer review reports are privileged because they failed to present any evidence in support of the privilege at the hearing and failed to have the contested documents available for an *in camera* inspection.[5] In response, relators argue that it was never an issue of whether medical information was involved, only whether the medical information would remain protected once it was summarized in a peer review report.[6] The record indicates that in Defendants' Response to Plaintiff's Amended Motion to Compel and at the hearing on the motion to compel, relators clearly argued that the reports were privileged because they contained the personal medical information of the nonparties. Also, at the hearing the parties and Judge Sakai discussed whether the medical information of nonparties was involved. Zaragosa's counsel argued to Judge Sakai that if there were privacy issues involved, then the identifying information of the nonparties could be redacted and a protective order could be put in place. Judge Sakai proceeded to order (1) the production of the peer review reports of the nonparties with the "confidential medical information" redacted, and (2) a protective order entered, purportedly to protect the identity and medical information of the nonparties.

As we have already concluded, the plain language of Texas Administrative Code rule 180.28(a) provides that a peer review report includes a summary of the patient's medical records. *See* 28 TEX. ADMIN. CODE § 180.28(a). Therefore, because peer review reports by definition include summaries of a patient's medical records and are protected from disclosure by Texas Rule of

---

[5] Neither party requested Judge Sakai conduct an *in camera* inspection.

[6] Even Zaragosa acknowledges in his response that a person's medical information is within a zone of privacy, but clarifies that not every publication of medical information invades an individual's constitutionally protected zone of privacy. In addition, Zaragosa later acknowledges that Dr. Parker was retained "for medical records review" on at least twenty-eight prior occasions.

Evidence 509(c) and the Medical Practice Act, relators did not waive their objection that the reports are privileged because no additional evidence was necessary. *See* TEX. R. EVID. 509(c)(2); TEX. OCC. CODE ANN. § 159.002(b)-(c). Finally, because the peer review reports contain the identity and medical information of nonparties, the privilege cannot be waived by relators because the privilege is held by the nonparties. *See In re Anderson*, 973 S.W.2d 410, 412 (Tex. App.—Eastland 1998, orig. proceeding).

## CONCLUSION

We conclude the trial court clearly abused its discretion in overruling relators' objections to Zaragosa's requests for production 20 and 21, which compelled the production of the peer review reports of nonparties. Accordingly, we conditionally grant the writ of mandamus. The writ will issue only if the trial court fails to withdraw its October 31, 2008 order compelling production of the documents within 10 days. In addition, the amended stay imposed by this court's order of November 17, 2008 is lifted.

Rebecca Simmons, Justice