COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | |
| IN RE: UNION PACIFIC RAILROAD COMPANY AND WANDA HECKEL, | § | No. 08-14-00141-CV |
| | § | AN ORIGINAL PROCEEDING IN |
| RELATORS, | § | MANDAMUS |
| | § | |
| | § | |

## **O P I N I O N**

Relators Union Pacific and Wanda Heckel have filed a petition for writ of mandamus challenging an order issued by the 120th District Court compelling them to turn over to the Real Party in Interest, Blanca Estella Alcantar, a portion of Heckel's medical records from two healthcare providers related to Heckel's diagnosis of and treatment for sleep apnea. We conditionally grant relief.

### FACTUAL SUMMARY

Fourteen-year-old Justin Alcantar was struck and killed by a Union Pacific train operated by engineer Wanda Heckel. The crew included the conductor, Harvey Comer, and engineer-in-training, Michael Shindo. Just before the accident, Comer mentioned that he thought something was on the track as the train approached Socorro, Texas. Heckel immediately began slowing the train and blowing the horn while they continued to watch the track. All three of them looked down the track and could see something, but none of them could identify the object. As the train

grew closer, the crew realized that a boy was walking along the track and bouncing a basketball with his back to the train. Both Heckel and the conductor applied the emergency brakes while Heckel continued blowing the horn. Justin remained oblivious to the approaching train. The crew continued its efforts to get Justin's attention but he did not move and the train struck and killed him.

Justin's parents, Blanca Estella Alcantar and Gabriel Alcantar, filed suit against Union Pacific, Heckel, Comer, and Shindo alleging negligence and gross negligence.[1] During her deposition, Heckel testified that at the time of the accident she was taking Metformin for diabetes, Trilipix and Zocor for high cholesterol, and Wellbutrin as part of a program to stop smoking. The only other medical condition Heckel had at the time of the accident was sleep apnea. She was first diagnosed in 2006 and it is controlled by use of a CPAP machine. Heckel identified three doctors she had seen in the years preceding the accident: (1) Dr. Gary Grindstaff, a podiatrist who performed surgery on her left ankle in 2009; (2) Dr. Teresa Pinaroc, a family physician; and (3) Dr. Sergio Alvarez, who treats Heckel for sleep apnea at Sonno Sleep Center. Alcantar sought to take depositions by written questions of Dr. Grindstaff, Dr. Pinaroc, and Sonno Sleep Center and requested all of Heckel's medical records "including, but not limited to, initial patient information sheets, patient history, correspondence, notes, medical reports, therapy reports, physical reports, blood tests, charts, notes, x-rays, emergency room records, admission sheets, discharge summary sheets, doctor's orders, lab reports, pathology reports, incident reports, psychologists reports, doctor progress reports, nurse's notes, statements, diagnoses, medication sheets, regarding the physical or mental condition of WANDA HECKEL .

---

[1] Justin's father later filed a motion to dismiss his claims with prejudice. The suit styled *Blanca Estella Alcantar, Individually and on Behalf of the Estate of Justin Alcantar, Deceased v. Union Pacific Railroad Company, Harvey B. Comer, Wanda Heckel, and Michael Shindo* (cause number 2011-1952) is pending in the 120th District Court of El Paso County.

. . ."

Heckel and Union Pacific filed motions for protective orders and moved to quash the depositions on written questions based on privilege under HIPAA and related state statutes as well as the physician-patient privilege under Texas Rule of Evidence 509. In response, Alcantar maintained that the documents fell into an exception set forth in TEX.R.EVID. 509(e)(4) because Heckel's "awareness, reaction time, vision, hearing, focus, memory, perception, and other capacities" were relevant to Alcantar's claims. At the hearing, Alcantar argued that the records were relevant because: (1) Heckel was taking medications which might have caused side effects such as confusion or hesitation; and (2) Heckel has sleep apnea, which Alcantar's attorney characterized as a "dangerous condition."

Respondent reviewed the records *in camera* and, on April 24, 2014, ordered Heckel to produce a portion of the medical records from Dr. Pinaroc and Sonno Sleep Care Center. Relators filed this mandamus petition and we granted their motion to stay the trial court's order pending mandamus review.

## PHYSICIAN-PATIENT PRIVILEGE

In their sole issue, Relators complain that the trial court abused its discretion by ordering Heckel to produce her private medical records because they are protected by the physician-patient privilege under Texas Rule of Evidence 509 and do not fall into an exception to the privilege because Alcantar's pleadings do not reference Heckel's medical condition and Heckel's physical condition is not an ultimate or central issue in Alcantar's negligence claims.

### *Relevant Law*

Mandamus is appropriate to address a court order requiring the production of privileged documents because the party resisting discovery does not have an adequate remedy by appeal. *In*

*re the University of Texas Health Center at Tyler*, 33 S.W.3d 822, 827 (Tex. 2000). Texas Rule of Evidence 509(c) provides as follows:

> In a civil proceeding:
>
> (1) Confidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed.
>
> (2) Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed.

Subsection (e) addresses four exceptions to the privilege. The pertinent exception is found in Subsection (e)(4) and it provides that an exception exists "as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense." TEX.R.EVID. 509(e)(4).

The Supreme Court addressed this exception in *R.K. v. Ramirez*, 887 S.W.2d 836 (Tex. 1994) and held that it applies when: (1) the records are relevant to the condition at issue in the litigation; and (2) the condition contained in the records is relied upon as a "part" of a party's claim or defense. Whether a defendant's condition is a "part" of a claim is determined from the pleadings, without reference to the evidence that is allegedly privileged. *R.K.*, 887 S.W.2d at 843 n.7. To be a "part" of a claim or defense, the condition itself must be a fact that alone carries legal significance under the substantive law. *R.K.*, 887 S.W.2d at 842-43. As a general rule, a condition will be a "part" of a claim or defense if the pleadings indicate that the jury must make a factual determination concerning the condition itself. *Id.*, at 843. It is not enough that the condition is *relevant* to the claim or defense because any litigant could plead some claim or defense to which a patient's condition could arguably be relevant and the privilege would cease

to exist. *R.K.*, 887 S.W.2d at 842-43. "Communications and records should not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue of fact, rather than an 'ultimate' issue for a claim or defense, or if the condition is merely tangential to a claim rather than 'central' to it." *R.K.*, 887 S.W.2d at 842. If both the relevance and "part of the party's claim or defense" requirements are met by the pleadings, the trial court must then perform an *in camera* inspection of the documents at issue. *Id.* at 842.

### The Relators' Defenses

Alcantar argues in her response that mandamus relief should be denied because Relators have failed to establish that Heckel's medical condition of sleep apnea is not "part" of the defenses asserted by the Relators. As the parties resisting discovery, Relators had the burden to plead the privilege and to produce evidence demonstrating its applicability. *Peeples v. Honorable Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex. 1985). It is undisputed that Relators met their burden. It then became Alcantar's burden to establish an exception to the privilege. *See In re USA Waste Management Resources, L.L.C.*, 387 S.W.3d 92, 98 (Tex.App.--Houston [14th Dist.] 2012, orig. proceeding)("The party seeking discovery of an otherwise privileged communication bears the burden of proving this exception."). Alcantar never argued in the trial court that the exception in Rule 509(e)(4) applies because Heckel's medical condition is an ultimate issue related to one or more of Relators' defenses. Consequently, the issue was never before the trial court and it could not form the basis of the trial court's ruling challenged in this original proceeding.

### The Pleadings

The primary dispute is whether Heckel's sleep apnea is a "part" of the negligence claims alleged against Heckel and Union Pacific. This question is resolved by examining Alcantar's

pleadings to determine whether they place this medical condition at issue. The pleadings allege that Alcantar's injuries and damages arose out of a Union Pacific train striking the decedent when he was walking near the railroad tracks and "that Decedent was or should have been readily visible to the oncoming train . . . ." The original petition also alleges that the injuries and damages were proximately caused by the negligent and grossly negligent conduct of the defendants and it identifies the following acts or omissions:

1. Hitting a human being who was clearly visibly and known to the train crew when the crew had adequate time and distance to bring the train to a complete stop prior to impact.

2. Violating a restrictive speed rule of [Union Pacific].

3. Failing to stop the train to avoid impact.

4. Having no rule, regulation or procedure on how to bring the train to a complete stop when the train crew sees a human being on or near the track.

5. Failing to keep a proper lookout for signal indicators in effect on the day of the incident.

6. Failing to operate the train safely within restricted-speed for the track on the day of the incident.

7. Failing to provide instructions to the crew regarding following the signal indicators for the track in effect on the day of the incident.

8. Failing to stop or slow.

9. Failure to yield the right of way.

10. Knowingly permitting persons to walk on or near the railroad tracks.

11. Failing to provide safe, convenient crossings for residents in a neighborhood [Union Pacific] has actual knowledge of continuous crossings and prior injuries.

12. Failing to provide adequate security to prevent human beings from walking near the railroad tracks in residential neighborhood when [Union Pacific] has actual knowledge of continuous crossings and prior injuries.

13. Failing to train and teach its train crews safety procedures when persons are on or near the tracks.

14. Failing to have safety meetings or job briefings on the hazards of persons on or near the tracks.

15. Failure to provide adequate warning.

16. Failing to keep a proper lookout for persons at or near the track.

17. Failing to maintain an adequate fence, guardrail, or other safety measures.

18. Failing to give an audible signal of the approach of the equipment.

19. Failing to apply the brakes.

20. Failing to maintain proper control of the train,

21. Failing to provide adequate signs, warnings or barricades.

22. Failing to inspect the premises in order to discover [Justin Alcantar].

23. Ignoring the safety of persons known to be on or near the tracks.

24. Violating the Rules of [Union Pacific] in failing to properly warn of [the train's] approach.

The pleadings do not directly allege that Heckel was physically or mentally impaired due to sleep apnea or any other medical condition at the time of the incident.

*The Case Law*

Alcantar cites three cases in support of her position that her pleadings sufficiently placed Heckel's physical or mental condition at issue: *R.K.*, 887 S.W.2d 836; *M.A.W. v. Hall*, 921 S.W.2d 911 (Tex.App.--Houston [14th Dist.] 1996, orig. proceeding); and *In re Whiteley*, 79 S.W.3d 729 (Tex.App.--Corpus Christi 2002, orig. proceeding).

In *R.K. v. Ramirez*, the plaintiffs brought a medical malpractice action against a physician, a clinic, and a hospital, related to prenatal care and delivery of a child who suffers from cerebral palsy, spastic quadriplegia, and mental retardation. *R.K.*, 887 S.W.2d at 838-39.

- 7 -

Initially, the plaintiffs' pleadings included only general allegations of negligence. *R.K.*, 887 S.W.2d at 839. The plaintiffs sought discovery of records related to R.K.'s treatment for a medical, mental, or emotional condition and R.K. resisted discovery asserting physician-patient and mental health information privileges. *Id.* at 839. The trial court ordered R.K. to turn over the records and R.K. sought mandamus relief. *Id.* The court of appeals granted mandamus relief because the pleadings failed to place R.K.'s medical condition in issue. *R.K. v. Ramirez*, 855 S.W.2d 204, 207 (Tex.App.--Corpus Christi 1993, orig. proceeding). Following that decision, the plaintiffs amended their petition to specifically allege that R.K.'s medical and emotional problems affected his ability to care for Mrs. Cadena and the clinic and hospital's selection of an unfit and incompetent person proximately caused the plaintiffs' damages. *R.K.*, 887 S.W.2d at 839 and n.3.

The Supreme Court rejected R.K.'s contention that the records were privileged unless his mental or emotional condition was an "element" of a party's claim or defense. Referencing the 1988 rule amendments which replaced the language "element of his claim or defense" with the language "a part of the party's claims or defense," the court did not consider the words to be synonymous. Instead, the court undertook to determine what this language means and whether R.K.'s mental or emotional condition was a "part" of any party's claim or defense. *Id.* at 842. After rejecting alternative interpretations, the court held:

> The scope of the exception should be tied in a meaningful way to the legal consequences of the claim or defense. This is accomplished, we believe, by requiring that the patient's condition, to be a 'part' of a claim or defense, must itself be a fact to which the substantive law assigns significance.

*Id.* The court concluded that R.K.'s condition was a "part" of the malpractice cause of action because the plaintiffs alleged that his medical and mental condition caused or contributed to his breach of the standard of care and the hospital and clinic knew or should have known of the

condition. *R.K.*, 887 S.W.2d at 843-44. Further, the court found that a jury determination that the condition existed was of legal significance to the negligence claims. *Id.* at 844. The pleadings here are readily distinguishable from the amended pleadings in *R.K.* because they do not include any allegations that Heckel's medical condition caused her to be negligent or proximately caused Alcantar's damages.

Alcantar next directs us to *M.A.W. v. Hall*, 921 S.W.2d 911 (Tex.App.--Houston [14th Dist.] 1996, orig. proceeding) in support of her argument that the exception in Rule 509(e)(4) applies. In *M.A.W.*, the plaintiffs filed suit against the relator, M.A.W., for medical malpractice alleging that he may have been under the influence of controlled substances and/or alcohol at the time he provided medical care to one of the plaintiffs. *M.A.W.*, 921 S.W.2d at 913-14. The plaintiffs requested production of medical records related to M.A.W.'s alleged substance abuse. *Id.*, at 914. The trial court ordered production of the records over M.A.W.'s assertion of the physician-patient privilege. *Id.* The Fourteenth Court of Appeals found that the pleadings placed M.A.W.'s substance abuse in issue such that the condition was part of the plaintiffs' claim. *Id.* at 915. *M.A.W.* is distinguishable because Alcantar's pleadings do not include any allegations that Heckel's sleep apnea caused or contributed to any negligent acts or omissions.

Finally, Alcantar also relies on yet another medical malpractice case, *In re Whiteley*, 79 S.W.3d 729 (Tex.App.--Corpus Christi 2002, orig. proceeding). Dr. John Wright performed a total knee replacement of the plaintiff, LaSethia Whiteley, and used the Cave-Rowe technique to resurface the kneecap. *In re Whiteley*, 79 S.W.3d at 731-32. The knee replacement failed and Whiteley sued. *Id.*, at 732. Whiteley alleged that Dr. Wright failed to properly perform medical treatment according to the applicable standard of care. *Id.*, at 732-33. Dr. Wright alleged in his answer that he did not breach the duty of care because he acted appropriately under the

circumstances. *In re Whiteley*, 79 S.W.3d at 733. The trial court denied Whiteley's motion to compel Dr. Wright to produce medical records of non-party patients on whom Dr. Wright performed the Cave-Rowe procedure. *Id.* The Thirteenth Court of Appeals observed that Dr. Wright's answer did not provide the basis for his defense, but it examined other materials in the record, including Dr. Wright's response to Whiteley's request that he disclose his legal theories and factual basis of his defense. *Id.* at 733. In that response, Dr. Wright specifically stated that he had performed the Cave-Rowe procedure in question on numerous occasions without complication. *Id.* at 733. Dr. Wright testified on deposition that of the total knee replacements he had performed suing the Cave-Rowe technique, only three had failed. *Id.* The court of appeals concluded that "Dr. Wright is relying on the medical condition of his other patients as the basis of his defense that he has been successful in the use of the Cave-Rowe technique." *Id.* Thus, the court determined Whiteley had established that the condition itself was a fact that carried some legal significance to Dr. Wright's defense. *Id.*

*Whiteley* does not support Alcantar's position because there are neither pleadings nor evidence in the record demonstrating that she is relying on Heckel's medical condition as the basis for her negligence claims such that it is an ultimate or central issue in the case. Heckel's sleep apnea and use of prescribed medications are not ultimate issues of fact with a direct legal consequence to the case. It is not enough that inadequately-treated sleep apnea might have caused Heckel to be drowsy or that the medications might cause confusion as a side effect. These theories amount to nothing more than an allegation that Heckel's medical condition may be relevant to the negligence claims. The Supreme Court clearly articulated in *Ramirez* that it is not enough that the condition is *relevant* to the claim or defense because any litigant could plead some claim or defense to which a patient's condition could arguably be relevant and the privilege

would cease to exist. *R.K.*, 887 S.W.2d at 842-43. We conclude that Alcantar has failed to establish the claimed exception to the physician-patient privilege. Consequently, we sustain Relators' sole issue and conditionally grant the writ of mandamus directing the trial court to vacate its order requiring Heckel and Union Pacific to produce the medical records at issue.


February 11, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Ferguson, Judge
Ferguson, Judge (Sitting by Assignment)