**In re SEARS, ROEBUCK AND CO.**

No. 14–03–00385–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 5, 2003.

Robert E. Thackston, Stephanie L. Spardone, Dallas, and David M. Gunn, Houston, for relator.

Arthur R. Almquit, Charles Herd, Kevin Phillip Parker, Patrick N. Haines, W. Mark Lanier, William Book, Houston, Bretton Craig Gerard, Addison, David Taylor, Laura Ann Frase, Melvin David Bailey, Dallas, Frank Albright Poff Jr., Texarkana, Gail C. Jenkins, Beaumont, for respondents.

Panel consists of Chief Justice SCOTT BRISTER and Justices EDELMAN and GUZMAN.

## OPINION

SCOTT BRISTER, Chief Justice.

Twice in the last ten years the Supreme Court of Texas has granted the extraordinary writ of mandamus in circumstances just like those here. Both times, the Court intervened in asbestos litigation when the trial court compelled discovery relating to products the plaintiffs never used for time periods they were not employed. *See In re American Optical Corp.*, 988 S.W.2d 711, 713 (Tex.1998); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex.1995). In this asbestos discovery dispute, the trial court compelled discovery relating to products the plaintiff never said he used for a time period beginning 15 years before he was born. Rather than invite the Supreme Court to answer this question a third time, we grant relator's petition for mandamus.

### The Requests

Joel Fuerstenau, a life-long Michigan resident suffering from mesothelioma,[1] sued Sears, Roebuck and Co. and 37 other defendants in Brazoria County, Texas.[2] He alleged exposure to asbestos throughout his life—as a child around his father's dusty clothes and work, as an apprentice from 1971 to 1978 in the family's plumbing and heating business, and as a union plumber for 24 years thereafter.

In sworn discovery responses regarding materials to which he had been exposed, Fuerstenau listed 11 categories of products made by 24 manufacturers. Only two—Homart boilers and water heaters—had any connection with Sears. Four coworkers designated for product identification added no others. As these Homart products were for residential use, Fuerstenau's exposure to them would have occurred before he began his 24–year career as a union plumber doing commercial jobs.

Fuerstenau's case was expedited due to his declining health. Two months before the trial setting, the plaintiffs served their first written discovery on Sears—a single-spaced 64–page request including 78 interrogatories (with 253 subparts) and 60 re-

---

1. The record reflects some uncertainty whether Fuerstenau suffered from mesothelioma or adenocarcinoma. For the purpose of this proceeding, we assume the plaintiffs' allegations are correct.

2. In view of our disposition, we do not reach Sears' complaints that Fuerstenau had no ties to Texas and that Michigan law applies to his substantive claims.

quests for production.[3] The plaintiffs' attorneys candidly admitted this was the "standard set" of discovery sent to asbestos manufacturers. When directed instead to a retailer like Sears, the result was a series of impossible requests:

- Interrogatory No. 2 asked Sears to provide the name, date of manufacture and sale, and asbestos content of each product it sold or made available for sale, including but not limited to a list of more than 200 items ranging from bath rugs and shower curtains to lawn mowers, sewing machines, washers, dryers, toasters, and waffle irons;

- Interrogatory No. 8 asked Sears to identify the location, description, and dates of operation of every Sears warehouse or sales office in Texas;

- Interrogatory No. 17 asked for a detailed description of every product Sears ever sold containing asbestos; and

- Interrogatory No. 20 requested the identity and address of all Sears sales offices or authorized dealers of asbestos-containing home construction products in the United States.

Sears promptly objected, the plaintiffs promptly moved to compel, and the trial court promptly held a number of hearings. Fuerstenau died before the trial court issued a written order.

3. In fairness to the plaintiffs, it should be noted the defendants' interrogatories required Fuerstenau to answer 33 interrogatories that included 114 subparts.

4. The first paragraph of the order stated in full:
   1. Sears' objections, as reflected in its various objections and responses to the requested discovery and in its Emergency Motion for Protection, are reserved, to be addressed by this Court at a later time[.]

5. These paragraphs stated in full:
   2. Sears is ordered to produce its documents and to provide information regard-

## The First Order

■ On April 1st, Judge Ben Hardin issued a written order regarding discovery. In the first paragraph, he ordered all of Sears' objections "reserved, to be addressed by this Court at a later time."[4] But a court must address objections *before* it compels discovery, not *after*. See Tex.R. Civ. P. 193.4(b) (providing no response to discovery is required if objections are sustained). Once time, labor, and money are spent on improper production, there is no undoing them; wasteful costs may be shifted, but never retrieved. By ordering discovery from Sears, Judge Hardin necessarily overruled its objections.

In the next two paragraphs, Judge Hardin ordered Sears to produce documents and information regarding listed products from the years 1940 to 1978.[5] The lists omitted the mundane household items from the plaintiffs' original request, but required production regarding water heaters and boilers of any brand name (not just Homart), and added furnaces and heaters. Further, the lists included materials and products allegedly "associated" with these appliances, including electric elements, fittings, repair parts, accessories, pipe coverings, adhesives, pastes, cements, firebricks, and so on.

ing each item on the enclosed lists, Exhibits A and A–2;
   3. The "relevant time period" as to Joel Fuerstenau's exposure to Sears' asbestos-containing (or possibly containing) products shall be for products designed, manufactured, marketed, sold, installed or removed at any time during the years 1940–1978, inclusive. For discovery regarding exposures or claims related to Sears' products, the inquiry shall be for exposures to said products arising at anytime during the same period, 1940–1978, inclusive[.]

In the fourth and final paragraph, Judge Hardin ordered Sears to answer "each and every" discovery request "fully, completely, specifically and substantively."[6] This paragraph does not contain any limitations as to products or years. The order does not indicate whether the middle two paragraphs were intended to limit this global order, or supplement it.

### The Stay and Clarification

■ After Sears filed its petition for mandamus complaining of the above order, we stayed the order for further consideration.[7] Perhaps recognizing the order went too far, the plaintiffs asked Judge Hardin to "clarify" it. During the pendency of our stay, he entered a new order (Sears alleges without adequate notice) that replaced and superceded the old one.

■ This was improper. The mere filing of a mandamus petition may not prevent a trial court from amending an order, but a stay order does. When we ordered the first order stayed, Judge Hardin was not at liberty to change it.[8] If the plaintiffs needed clarification of the trial court's order, they should have asked us to order one.

We rarely stay trial court orders, recognizing trial judges must often make further decisions before appellate timetables and processes allow us to respond. But when we do issue a stay order, it must be obeyed.[9] We hold that Judge Hardin abused his discretion in modifying his order in violation of our stay.

### The "Clarified" Order

■ The "clarified" order repeated the first three paragraphs of the first order, but amended the fourth to require Sears to respond to the plaintiffs' discovery requests "as ordered by the Court on the record at the hearings on January 22 and 27, 2003."[10] Not a single page from either

---

6. The final paragraph stated in full:

> 4. Subject to and without waiving its prior objections, Defendant Sears shall fully, completely, specifically and substantively Answer and Respond to each and every Interrogatory and Request for Production served upon it by Plaintiffs Joel and Debra Mary Fuerstenau, for itself, for all predecessors and successors [sic] entities of Sears, and for Allstate Insurance Company throughout the period of Allstate's status as a subsidiary of Sears, with all responsive documents and items being identified by number as to each numbered interrogatory and request for production, and with such answers and responses to be provided by Sears to Plaintiffs, at the offices for Plaintiffs' counsel, no later than May 2, 2003.

7. Our order stated; "It appears from the facts stated in the petition that relator's request for relief requires further consideration and that relator will be prejudiced unless immediate temporary relief is granted.... We therefore ORDER the April 1, 2003 discovery order ... is stayed until final decision by this Court on relator's petition for writ of mandamus, or until further order of this Court."

8. *Cf. In re American Home Assurance Co.*, 88 S.W.3d 370, 372 (Tex.App.-Texarkana 2002, orig. proceeding) (reviewing amended order in the interest of judicial economy, even though it was entered after appeals court stayed enforcement of original order).

9. *Cf.* Tex.R.App. P. 29.5 (barring trial court during interlocutory appeal from entering orders inconsistent with appellate temporary orders or interfering with appellate court's jurisdiction).

10. The amended paragraph stated:

> 4. Subject to and without waiving its prior objections, Defendant Sears shall answer and respond to the Interrogatories and Request for Production as ordered by the Court on the record at the hearings on January 22 and 27, 2003. Sears shall answer for itself, all predecessors and successor entities of Sears and for Allstate Insurance Company during the period of Allstate's status as a subsidiary of

hearing is attached to the clarifying order itself; the transcripts included in our record are 90 pages long.

This order is inadequate for several reasons. First, it is obviously incomplete. The hearing on January 22nd begins with the Court's declaration, "First, my ruling of yesterday stands on the list of products." Thus, on the most critical issue (i.e., which of Sears' products must be covered in its responses), the actual ruling is referenced but not included. The order excludes additional rulings that took place on January 21st (a further 60 pages in the record) and in a telephone conference on February 11th (an additional 20 pages). Taken altogether, two obvious facts emerge: (1) Judge Hardin was nothing if not patient and thorough, but (2) his written order is incomplete.

Second, the order creates internal conflicts by incorporating so much dialogue. For example, the clarified order expressly limits discovery to the time period 1940 to 1978. But for many of the discovery requests, Judge Hardin orally ordered that production be made without any limitation on the time period at all. Because this discovery order was never committed to paper, no one ever addressed the apparent conflicts and uncertainties within it.

Third, it is hard to determine what the order is. No transcript of either hearing is attached to the order, and our record does not reflect that either was filed with the court clerk. Thus, to find out what the Court ordered, it appears one must obtain a copy of these transcripts from the court reporter, and then find where each item is discussed within those 200 pages. But that is still not enough. As is usually the case in oral hearings, the discussion between counsel and the court often backs up to previous matters or jumps ahead to upcoming ones.[11] Concessions or rulings in one place apply to items discussed somewhere else.[12] Items are disposed with a nod or an inference that can only be interpreted by those who were there.[13] As a result, it is not always possible to tell what the trial court's order means.

■ Finally, it is not just the court's order that is unclear—it is hard to tell from this record what many of the discovery requests were. Discovery requests

---

Sears. Sears shall identify responsive documents and items by number as to each numbered interrogatory and request for production.

11. [Plaintiffs' Counsel]: Next one, your Honor, is 49.

[Court]: And we had an agreement on 49, I believe.

[Plaintiffs' Counsel]: And next one is 50. And we may have—this is about warning labels. We may have included it in 25.

[Court]: Yeah, I think so.

12. [Plaintiffs' Counsel]: Yes. 35—

[Defense Counsel]: Again, Judge, I think this is just way overbroad and it's not relevant and it's—you know, we're going to be running down 6,000 different rabbit trails if we have to start researching every company that Sears ever had an interest in, sold, purchased, et cetera.

[Court]: There's an interrogatory on this, and however we limited the interrogatory, I'll order the Request for Production be done the same, if it was limited.

[Plaintiffs' Counsel]: I'll go back and look at the interrogatory. And No. 36 ...

13. [Plaintiffs' Counsel]: Okay. 29, sales materials I would recommend be limited to the Exhibit A items.

[Court]: And the time frame.

[Plaintiffs' Counsel]: Time period, yes.

[Defense Counsel]: And we're going to go forward with the scope, the subsidiary and predecessor entities; or are you limiting it to Sears?

[Plaintiffs' Counsel]: What I call the Sears family.

[Court]: I'm including the affiliates.

[Plaintiffs' Counsel]: Right. The next one is 30 ...

must be reasonably tailored to the case.[14] But the discovery requests here were tailored to asbestos manufacturers, and thus often needed extreme makeovers to fit Sears. Repeatedly during the hearings (and to some extent still in this Court), the plaintiffs had to make cuts and stitches more indicative of battlefield surgery than tailoring.

We recognize the pressure on all concerned to conduct this trial at a time when Joel Fuerstenau could still attend it. But the rules of procedure do not contemplate oral discovery requests, much less an entire set crafted with the trial court's help in a hearing on a motion to compel. The trial court should have recognized the plaintiffs' concessions and "clarifications" for what they were—a recognition that their requests were overbroad. *See General Motors Corp. v. Lawrence,* 651 S.W.2d 732, 734 (Tex.1983) (finding abuse of discretion based in part on counsel's concession that relevant information was much less than trial court's order).

There are reasons why detailed discovery orders should be written down. Because several of them are demonstrated by the defects in this order, we hold the trial judge abused his discretion by signing a written order that merely incorporated 200 pages of oral rulings.

### The Substantive Problem

■ Aside from the problems in the timing and format of this order, its substance was also improper. A "fishing expedition" is one aimed not at supporting existing claims but at finding new ones. *See Dillard Dept. Stores, Inc. v. Hall,* 909 S.W.2d 491, 492 (Tex.1995). As noted above, the only Sears products that Joel Fuerstenau or any of his designated co-workers identified as potential sources of asbestos exposure were Homart water heaters and boilers. Yet the order required production of far more.

The plaintiffs' attorneys candidly admitted they developed the list of products attached to the trial court's order by scanning a Sears catalog for products *they* (not any testifying witness) thought *might* contain asbestos and *might* be used with Homart boilers and water heaters:

> We already know that Mr. Fuerstenau identified Sears boilers and [water] heaters. Every other product on Exhibit A, in our belief, is related to boilers and heaters. Now, we could be wrong because we're not engineers; and we're guessing here since Sears did not provide us any discovery responses.

■ It is not enough—even for discovery purposes—to guess what products may have injured a plaintiff. Nor is it enough that a plaintiff was "at least potentially exposed" to a product, as anyone can be "potentially exposed" to everything. In order to justify the cost of producing documents and information, there must be a likely benefit. *See* TEX.R. CIV. P. 192.4(b) (prohibiting discovery when burden outweighs likely benefit). There is no benefit in conducting discovery relating to products as to which there is no evidence Joel Fuerstenau was ever exposed.

Although some latitude is necessary in discovery matters, Sears extended some latitude here. Before Judge Hardin signed any order, Sears presented several witnesses to testify concerning which of its products might be used with a water heater or boiler, and whether they contained asbestos. Nevertheless, no witness has yet suggested that Joel Fuerstenau might have been exposed to asbestos from any except the two initially stated. Indeed, it

14. *See In re Alford Chevrolet–Geo,* 997 S.W.2d 173, 180 (Tex.1999).

is hard to imagine how anyone could, as Fuerstenau—

- never installed Homart products (because he was not a Sears contractor), and thus presumably would not know the origin of any adhesives, gaskets, or cements used by the installer;
- could not remember any specific location or occasion where he helped repair or remove Homart products, and thus could not make inquiry of the installer; and
- could only identify Homart products from a nameplate,[15] which he did not see anywhere except on the water heaters or boilers themselves.

As the basis for his order, Judge Hardin stated on the record his opinion that defendants must first identify which of their products contain asbestos, and only then must plaintiffs identify the products to which they claimed exposure. But in addition to providing an unnecessary temptation to memory,[16] this procedure requires defendants to produce information regarding a claim the plaintiff has not yet made.

We recognize asbestos claimants face substantial obstacles in proving the products to which they were exposed decades earlier. This is especially true in this case, as Joel Fuerstenau worked around Sears' products but never installed them.[17] But Fuerstenau's death from an asbestos-related disease does not entitle his estate to recover money from all companies selling asbestos products. *See Gaulding v. Celo-*

*tex Corp.,* 772 S.W.2d 66, 71 (Tex.1989) (rejecting market-share theory of liability in asbestos litigation). Instead, recovery is available only from those whose products caused his disease

Further, asking asbestos claimants to identify the products on which they worked is by no means asking the impossible. In one of the mandamus cases cited at the outset, the Supreme Court noted the plaintiff had pictures of the defendant's products to use to identify them. *See American Optical,* 988 S.W.2d at 713. Here, the plaintiffs had the ubiquitous Sears catalog to help them do the same. Moreover, the record contains little evidence that efforts were made to identify locations where Fuerstenau might have worked on residential systems. Undoubtedly, this would take a lot of work, but that alone is no reason to shift the burden of identification to Sears.

### Conclusion

■ A central consideration in determining overbreadth is whether discovery requests could have been more narrowly tailored. *See In re CSX Corp.,* 2003 WL 22272604, at *3, 124 S.W.3d 149, 153 (Tex. 2003). Because the requests here clearly could, the trial court abused its discretion by holding otherwise. Sears is entitled to mandamus relief, as an eventual appeal is not an adequate remedy. *See id.* (holding appeal is inadequate remedy when burden of discovery far exceeds any benefit). We

---

**15.** [Fuerstenau]: I can remember—yeah, I can remember tearing down Homarts. Yeah. [Defense Counsel]: Do you recall any specific places where you did that? [Fuerstenau]: No. No, not really. [Defense Counsel]: Was there anything distinctive in the look of a Homart water heater? [Fuerstenau]: Just the name plate, I guess.

**16.** *See, e.g., G–I Holdings, Inc. v. Baron & Budd,* 179 F.Supp.2d 233 (S.D.N.Y.2001) (dis-

cussing claims against law firm based on memo allegedly counseling asbestos clients how to fabricate product identification).

**17.** *See id.* at 242 (quoting law firm's memo to clients to "testify ONLY about INSTALLA-TION of NEW asbestos, NOT tear-out" because "it is almost impossible to prove what brand of material was being torn out") (emphasis in original).

direct the district court to vacate its discovery orders of April 1 and May 12, 2003, and to conduct further proceedings consistent with this opinion. The writ will not issue unless the district court fails to comply promptly.