306 S.W.3d 875 (2010)
In re COOPER TIRE & RUBBER COMPANY, Relator.
No. 14-09-00906-CV.
Court of Appeals of Texas, Houston (14th Dist.).
February 2, 2010.
*878 Ruth G. Malinas, Christopher John Deeves, San Antonio, TX, T. Christopher Trent, Houston, TX, for appellants.
Kirk L. Pittard, Dallas, TX, Kyle Wayne Farrar, Robert J. Malinak, Wesley T. Ball, Houston, TX, for appellees.
Panel consists of Chief Justice HEDGES and Justices ANDERSON and BOYCE.

OPINION
JOHN S. ANDERSON, Justice.
On October 26, 2009, relator, Cooper Tire & Rubber Company, filed a petition for writ of mandamus in this Court. See Tex. Gov't Code Ann. § 22.221 (Vernon 2004); see also Tex.R.App. P. 52. In the petition, Cooper Tire asks this Court to compel the Honorable R.K. Sandill, presiding judge of the 127th District Court of Harris County, to set aside his October 12, 2009 order compelling relator to produce documents reviewed in camera because they contain confidential trade secret information and, alternatively, are not relevant. We conditionally grant the petition.

BACKGROUND
On October 27, 2007, the plaintiffs were involved in a head-on collision with Dustin Langstaff.[1] The plaintiffs allege that the tread separated from the right rear tire on Langstaff's vehicle, causing him to lose control and collide with the vehicle driven by one of the plaintiffs, Maria Del Rocio Rodriguez, and occupied by the other plaintiffs. The plaintiffs sued Cooper Tire, the manufacturer of the tire at issue, the Weather-Master S/T, for strict liability, design defect, manufacturing defect, marketing defect, and negligence. The plaintiffs allege that Cooper Tire failed to incorporate a design element known as belt edge gumstrips ("BEGs") into the design for the Weather-Master S/T, and that the incorporation of this design element would have resulted in a safer alternative design.
The plaintiffs seek documents regarding a different tire that show when BEGs were added and removed from that tire. The tire involved in the accident was made from Green Tire Spec 3004, while the documents the plaintiffs seek are for the tire made from Green Tire Spec 2257. The Green Tire Spec ("GTS") is essentially the tire design or fundamental blueprint according to which the given tire is manufactured and reflects the various manufacturing and design changes to a GTS.
In response to the plaintiffs' requests for production, Cooper objected on the basis of relevance. The plaintiffs moved to compel production. In response to the plaintiffs' motion to compel, Cooper Tire argued that the requested documents contain trade secrets and they are not relevant because they concern information on a tire other than the tire involved in the accident.
*879 The plaintiffs contend that the documents for GTS 2257 are relevant because they show when BEGs were added and removed and the circumstances surrounding tire failures both with and without BEGs. Specifically, the plaintiffs argue that this information is necessary to establish that Cooper Tire had actual knowledge of the defect in its tire design and that BEGs would cure the defect, but continued to produce defective tires with conscious disregard for the rights and safety of people like the plaintiffs.
On August 18, 2009, the trial court ordered Cooper Tire to produce in camera documents responsive to the plaintiffs' motion to compel regarding GTS 2257. On October 5, 2009, the trial court conducted the in camera review and, on October 12, 2009, the trial court signed the following order:
To prevail on their design defect claim at trial, Plaintiffs have the burden of proving Defendant could have provided a safer alternative. Documents which show that Cooper Tire knew of possible design changes that could have made the tire at issue less likely to fail are relevant and a proper subject for discovery. Any danger of disseminating this information is remedied by the Protective Order that is in place.
IT IS THEREFORE ORDERED that Defendant Cooper Tire shall produce the documents reviewed in camera on October 5 2009, to Plaintiffs within 5 business days of this order.
The trial court determined the documents are relevant, but did not address whether the documents contain trade secret information.

MANDAMUS STANDARD OF REVIEW
To be entitled to the extraordinary relief of a writ of mandamus, the party resisting discovery bears the heavy burden of establishing an abuse of discretion and an inadequate remedy by appeal. In re CSX Corp., 124 S.W.3d 149, 151 (Tex.2003) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. In re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding) (per curiam); Walker v. Packer, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). In reviewing whether appeal is an adequate remedy, we consider whether the benefits of mandamus review outweigh the detriments. In re BP Prods. N. Am., Inc., 244 S.W.3d 840, 845 (Tex.2008) (orig. proceeding).

ANALYSIS

Trade Secret Privilege
"A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex.1996). Rule 507 of the Texas Rules of Evidence provides for the protection of trade secrets:
A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.
Tex.R. Evid. 507.
The trade secret privilege seeks to accommodate two competing interests. *880 In re Continental Gen. Tire., Inc., 979 S.W.2d 609, 612 (Tex.1998) (orig. proceeding). First, it recognizes that trade secrets are an important property interest, worthy of protection. Id. Second, it recognizes the importance placed on fair adjudication of lawsuits. Id. Rule 507 accommodates both interests by requiring a party to disclose a trade secret only if necessary to prevent "fraud" or "injustice." Id. Disclosure is required only if necessary for a fair adjudication of the requesting party's claims or defenses. Id.
The party asserting the trade secret privilege has the burden of proving that the discovery information sought qualifies as a trade secret. In re Bass, 113 S.W.3d 735, 737 (Tex.2003) (orig. proceeding). If the resisting party meets its burden, the burden shifts to the party seeking the trade secret discovery to establish that the information is necessary for a fair adjudication of its claim. Id. It is an abuse of discretion for the trial court to order production once trade secret status is proven if the party seeking production has not shown necessity for the requested materials. Id. at 738.
To determine whether a trade secret exists, the following six factors are weighed in the context of the surrounding circumstances: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. In re Union Pac. R.R. Co., 294 S.W.3d 589, 592 (Tex.2009) (orig. proceeding) (per curiam). The party claiming a trade secret is not required to satisfy all six factors because trade secrets do not fit neatly into each factor every time. In re Bass, 113 S.W.3d at 740.
The Texas Supreme Court has not stated conclusively what would or would not be considered necessary for a fair adjudication; instead, the application depends on the circumstances presented. In re Bridgestone/Firestone, Inc., 106 S.W.3d 730, 732 (Tex.2003) (orig. proceeding). The degree to which information is necessary depends on the nature of the information and the context of the case. Id. However, "we can say with certainty that the test cannot be satisfied merely by general assertions of unfairness." Id. "Just as a party who claims the trade secret privilege cannot do so generally but must provide detailed information in support of the claim, so a party seeking such information cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." Id. at 732-33. An appellate remedy does not exist if a trial court orders a party to produce privileged trade secrets absent a showing of necessity. In re Bass, 113 S.W.3d at 745.

Application of Six Factors
In support of its claim of trade secret privilege, Cooper Tires submitted three affidavits of Anthony E. Brinkman, Cooper Tire's Principal Tire Analysis Engineer, dated August 5, 2008, February 20, 2009, and August 7, 2009. After reviewing Brinkman's three affidavits together and applying the six factors, we conclude that Cooper Tire has established that the subject documents contain trade secrets.

*881 Factors One, Two and Three

The first three factors are the extent to which the information is known outside Cooper Tire's business; the extent to which the information is known by employees and others involved in Cooper Tire's business; and the extent of measures taken by Cooper Tire to guard the secrecy of the information. Brinkman testified that Cooper Tire keeps the information contained in the GTS History of GTS 2257, Product Change Notifications ("PCNs") related to the addition and removal of BEGs in GTS 2257, the Experimental Mold Design for GTS 2257, and Adjustment Follow-Up Reports for GTS 2257 secret, and this information is not generally known or ascertainable by its competitors. Cooper Tire's policies with respect to handling trade secret information are given to all salaried employees when they are hired. All salaried employees must sign a nondisclosure agreement stating they understand that Cooper Tire's internal information and documentation such as research, drawings, formulae, methods, processes, know-how, and facilities are trade secrets and this information will be treated as such. Cooper Tire's policy statement on business ethics and standards of conduct emphasizes the importance of appropriately safeguarding the company's trade secrets, including without limitation, planned new products, the ways Cooper Tire manufactures its products, and test data. Cooper Tire's policy on disclosures and use of corporate information forbids all employees from disclosing trade secret information without proper authorization from an officer of Cooper Tire.
Access is limited and tight controls are maintained for any vendors, business partners, contractors, and all other individuals who are not employed by Cooper Tire, but require entry onto Cooper Tire property for a compelling business necessity. Cooper Tire's Technical Center in Findlay, Ohio is locked and accessible only through special, computerized coded access cards and/or coded keypad access 24 hours a day. A similar system is employed at Cooper Tire's corporate headquarters in Findlay, Ohio. Access to Cooper Tire's manufacturing plant is through 24-hour guarded entrances.
Cooper Tire may share its trade secret information with its employees or agents without endangering the trade secret's protection. See In re Bass, 113 S.W.3d at 742. Brinkman details Cooper Tire's efforts maintain the secrecy of its information. See Phillips v. Frey, 20 F.3d 623, 631 (5th Cir.1994) (explaining party that fails to take reasonable precautions to secure its secrecy cannot properly claim that information constitutes trade secret). Therefore, Cooper Tire has established that it maintains procedures to keep the information secret.[2] Accordingly, we conclude *882 that factors one, two, and three weigh in favor of finding that the documents contain trade secret information.

Factor Four
The fourth factor is the information's value to Cooper Tire and its competitors. In his affidavits, Brinkman explained the importance of the type of information in the GTS 2257 documents. Brinkman explained that the GTS History summarizes revisions that have been made to a GTS throughout the history of the GTS, and such documents reflect various manufacturing and design changes and can include rubber compound formula information.
Product Change Notifications ("PCNs") are issued to notify personnel of an impending authorized product change, and these documents include a description of the change, the reason for the change, the data supporting the change, the products affected by the change, a proposed implementation schedule, and the plants affected by the change. PCN documents may also contain analysis and data regarding the material production, and processing requirements necessary to implement the change and rubber compound formula information.
With respect to the Experimental Mold Designs, in the manufacturing process, tire builders assemble raw and uncured components into a "green" tire that is placed in a curing mold. The green tire is then subjected to heat and pressure to achieve its final form.
Adjustment Follow-Up Reports, which contain trade secret information, are issued at the request of the engineer to determine the impact of a design or manufacturing change to a particular tire design or GTS on the number of tires manufactured to that GTS returned to Cooper Tire for a specific condition. The reports contain its adjustment or tire return information for the particular GTS and specific condition being examined as well as the analysis and conclusions drawn from that information. They may also contain production information and background information regarding the change being examined.
Brinkman testified that the documents contain trade secret information developed at great expense to Cooper Tire; such information would be extremely valuable to its competitors; a competitor could use the information to copy Cooper Tire's products and sell them in the tire market in competition with Cooper Tire; and such competitor could do so without compensating Cooper Tire for its design expenses. The availability of Cooper Tire's specifications for tire building, manufacturing, and design, and other documents to another tire manufacturer would enable that manufacturer to gain a significant competitive advantage over Cooper Tire because it would allow the competitor to evaluate the performance of various tire components, without investing any time or expense.
Brinkman further testified that conceptualizing, developing, testing, and implementing new products and improving the durability or performance characteristics of current products require a substantial commitment of time and personnel and an enormous financial and technological investment. Any advantage, whether it is a gain in lead time for the introduction of new products or an understanding of the *883 competition's weakness, thinking, goals, and strategy can lead to significant gains.
With adjustment data, a competitor could discern or infer certain qualities about Cooper Tire's products and thereby adjust its product or warranty practices to the same quality level to better compete. Adjustment data would permit a competitor to learn Cooper Tire's production schedule, including the numbers and types of tires produced, from which the competitor could discern or infer the demand for particular types of products, and such information could be used to the competitor's advantage. Cooper Tire's competitors do not publicize their tire return and other adjustment data because of its competitive value.
Brinkman's affidavits sufficiently establish the value of the information contained in the subject documents to Cooper Tire and its competitors. Therefore, we conclude that factor four weighs in favor of finding that the subject documents contain trade secret information.

Factor Five
The fifth factor is the amount of money expended by Cooper Tire in developing information. Cooper Tire admits that Brinkman does not place a dollar figure on developing the requested information about the GTS 2257. This factor weighs against finding that the documents contain trade secret information.

Factor Six
Factor six is the ease or difficulty with which the information could be properly acquired or duplicated by others. Brinkman testified that this information could not be easily duplicated, and this information would facilitate easy duplication of Cooper Tire's product. With regard to adjustment data reports, the plaintiffs concede that a competitor generally cannot acquire or duplicate data that would appear in such reports given that these reports are generated by information gathered by Cooper Tire. Brinkman testified that Cooper Tire's competitors do not publish their adjustment data. We find that this factor weighs in favor of finding that the documents contain trade secret information.
Cooper Tires has established five of the six factors. However, Cooper Tire is not required to establish all six factors. See In re Bass, 113 S.W.3d at 740. Weighing the factors in the context of the surrounding circumstances, we conclude that Cooper Tire has established that the documents contain trade secrets. See In re Union Pac. R.R. Co., 294 S.W.3d 589, 592. Because Cooper Tire met its burden to establish that the documents contain trade secret information, the burden shifted to the plaintiffs to establish that the information is necessary for a fair adjudication of their claims. See Bass, 113 S.W.3d at 737.

Necessary for Fair Adjudication
Cooper Tire argues that the plaintiffs did not meet their burden to produce evidence "demonstrat[ing] with specificity exactly how the lack of information will impair the presentation of the case on the merits to the point that an unjust result is real, rather than a merely possible, threat." In re Bridgestone/Firestone, Inc., 106 S.W.3d at 733. The plaintiffs argue that there is sufficient evidence to support a determination that these documents are necessary for the fair adjudication of their claims because the information is essential to prove two elements of their claims. First, the plaintiffs' design defect claims require evidence that a safer alternative design was available when the subject tire was manufactured, and evidence that the use of BEGs on other Cooper Tires reduced the number of tire separation incidents *884 establishes this point. Second, the plaintiffs' claim for punitive damages requires proof that Cooper Tire had actual subjective awareness of the risk associated with producing defective tires that could be remedied by BEGs and, nevertheless, proceeded to produce defective tires with conscious indifference to the rights and safety of people like the plaintiffs.
Brinkman stated that the use of BEGs is a method of providing the proper thickness of rubber at the belt edges, and that the rubber on the subject tire was at the proper thickness. Based on these statements, the plaintiffs contend that Cooper Tire intends to argue that the inclusion of the BEGs would not decrease the number of tread separations in the subject tire. Therefore, the plaintiffs claim it would be unjust to allow Cooper Tire to assert that the inclusion of the BEGs would not have been a safer alternative design while depriving the plaintiffs of evidence that the inclusion of BEGs as part of a different Cooper Tire designs decreased the number of tread separations.
The plaintiffs have not established that the trade secret information is necessary to the fair adjudication of their claim that the use of BEGs provides a safer alternative design. In their briefing to the trial court, the plaintiffs rely on documents already produced to them that "discuss[] the use of BEGs to improve Cooper's tires." Moreover, the Texas Supreme Court recently rejected a similar argument regarding punitive damages, explaining that "we would have difficulty concluding that evidence of damages, even punitive damages, could not be anywhere but through trade secrets." In re Union Pac. R.R. Co., 294 S.W.3d at 593. We hold that the plaintiffs have not met their burden to establish the information in the GTS 2257 documents is necessary to a fair adjudication of their claims. Because the plaintiffs have not established that the trade secret information is necessary for a fair adjudication of their claims, the trial court abused its discretion by compelling Cooper Tire to produce the GTS 2257 documents. See In re Bass, 113 S.W.3d at 737. Moreover, Cooper Tire does not have an adequate remedy by appeal. See id. at 745 (holding appellate remedy does not exist if trial court orders party to produce privileged trade secrets absent showing of necessity.).

Relevance
We also conclude, aside from our holding that the documents are trade secrets, that the GTS 2257 documents are beyond the scope of permissible discovery. The scope of discovery is a matter of trial court discretion. In re CSX Corp., 124 S.W.3d at 152. Discovery is limited to matters relevant to the case. Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 814 (Tex. 1995) (orig. proceeding) (per curiam); see also Tex.R. Civ. P. 192 cmt. 1 ("While scope of discovery is quite broad, it is nevertheless confined by the subject matter of the case and reasonable expectations of obtaining information that will aid resolution of the dispute."). Therefore, discovery requests must be reasonably tailored to include only matters relevant to the case. In re Am. Optical Corp., 988 S.W.2d 711, 713 (Tex.1998) (orig. proceeding) (per curiam). The Texas Supreme Court has repeatedly admonished that discovery may not be used as a fishing expedition. K Mart Corp. v. Sanderson, 937 S.W.2d 429, 431 (Tex.1996) (orig. proceeding) (per curiam); Dillard Dep't Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex.1995) (orig. proceeding) (per curiam); Texaco, Inc., 898 S.W.2d at 815. A trial court abuses its discretion when it compels overly broad discovery. In re Graco Children's Prods., Inc., 210 S.W.3d 598, 600 (Tex.2006) (orig. proceeding) (per curiam).
*885 Cooper Tire argues that discovery sought in a product liability case is limited to the product at issue in the case. We agree. Overbroad requests encompassing products beyond those at issue in a case violate the rule that discovery requests must be reasonably tailored to include only matters relevant to the case. In re Alford Chevrolet-Geo, 997 S.W.2d 173, 180 n. 1 (Tex.1999) (orig. proceeding). The Texas Supreme Court has granted mandamus relief in several product-liability cases when the discovery order covered products the plaintiff never used.[3]
Brinkman testified that the tires manufactured to GTS 2257 are not similar to the tire in this case, GTS 3004, in terms of design or manufacture. Brinkman explained 22 ways in which the tires are different, including manufacturing date, plant of manufacture, brand name, GTS, size, speed rating, estimated centrifugal force, maximum load carrying capacity, maximum inflation pressure, UTQG rating, total cured weight, overall diameter, section width, tread width, tread depth new, revolutions per mile, wheel fitment, belt, ply, and ply construction. In light of these significant differences, we conclude that Cooper Tire has shown that the tires are substantially different. Accordingly, we hold the GTS 2257 documents are not relevant and are beyond the permissible scope of discovery. Moreover, Cooper Tires does not have an adequate remedy by appeal. See In re CSX Corp., 124 S.W.3d at 153 (holding relator lacked adequate remedy by appeal where discovery order compelled production of "patently irrelevant" documents).

CONCLUSION
We hold the trial court abused its discretion by compelling Cooper Tire to produce to the plaintiffs the documents submitted in camera. Accordingly, we conditionally grant the petition for writ of mandamus and direct the trial court to set aside its October 12, 2009 order compelling Cooper Tire to produce to the plaintiffs the subject documents. The writ will issue only if the trial court fails to act in accordance with this opinion. We list the stay issued on October 26, 2009.
NOTES
[1] The plaintiffs below are Maria Del Rocio Rodriguez, Individually and as Next Friend of William Vasquez, a Minor; Santiago Vasquez; Macrina Hernandez, Individually and as Next Friend of Ximena Chavez and Jose Chavez, Minors; and Jose Chavez and Elena Rodriguez, Individually and as Next Friend of Estefania Rodriguez, Yesenia Rodriguez, and Jesus Rodriguez, Minors.
[2] See Union Pac. R.R. Co., 294 S.W.3d at 592 ("The information is not generally known or readily available to Union Pacific's competitors or its customers or other businesses. The information is not even generally known throughout the company. Rather the information is known only to a limited number of Union Pacific employees and certain management employees."); Bancservices Group, Inc. v. Strunk & Assocs., L.P., No. 14-03-00797-CV, 2005 WL 2674985, at *3 (Tex.App.-Houston [14th Dist.] Oct. 20, 2005, pet. denied) (mem. op.) ("[T]he compilation and implementation of those parts were not generally known.... All employees of Strunk were required to sign a confidentiality agreement. In addition, the banks who purchased the program were required to sign a confidentiality agreement."); In re The Cayman Island Firm of Deloitte & Touche, No. 04-01-00491-CV, 2001 WL 1042233, at *4 (Tex.App.-San Antonio Sept. 12, 2001, orig. proceeding) (not designated for publication) ("Pilling's affidavit details the efforts by DT Cayman to maintain the secrecy of the Manual, including that its disclosure is limited internally on a `need to know' basis. Pilling also states that the information is highly confidential and proprietary and would greatly benefit DT Cayman's competitors. Although the details offered in the affidavit are sketchy, the affidavit is sufficient to satisfy the initial burden imposed on DT Cayman.").
[3] See, e.g., In re Graco Children's Prods., 210 S.W.3d at 600-01 (granting relief on discovery order regarding documents related to products that did not relate to alleged defects in harness clip of car seat at issue); In re Am. Optical Corp., 988 S.W.2d at 713 (granting relief on order allowing discovery related to respiratory protection equipment plaintiffs never claimed to have used); Texaco, Inc., 898 S.W.2d at 814 (granting relief on discovery order regarding substances to which plaintiffs never alleged exposure); Gen. Motors Corp. v. Lawrence, 651 S.W.2d 732, 734 (Tex. 1983) (orig. proceeding) (granting relief on discovery order regarding vehicles without fuel filler-neck that was allegedly defective). The courts of appeals have similarly granted mandamus relief. See, e.g., In re Merck & Co., 150 S.W.3d 747, 750 (Tex.App.-San Antonio 2004, orig. proceeding) (granting relief on order allowing discovery of "pharmaceutical product that the deceased plaintiff never used, that has yet to be sold within the United States, and that has a different chemical structure and patent than the purportedly defective medication at issue"); In re Sears Roebuck & Co., 123 S.W.3d 573, 578 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding) (granting relief on order allowing discovery of products to which plaintiffs were never exposed); but see In re Exmark Mfg. Co., 299 S.W.3d 519 (Tex.App.-Corpus Christi 2009, orig. proceeding [mand. pending.]) (denying relief on order allowing discovery regarding lawnmowers not used by plaintiffs).