**Stay Lifted and Petition for Writ of Mandamus Conditionally Granted in Part and, Denied in Part and Opinion filed August 27, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-24-00218-CV

### IN RE C-AUTOMATION, INC., C-AUTOMATION OPS, LLC, AND MICHAEL GOULD, Relators

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-55528**

## OPINION

On March 26, 2024, relators C-Automation, Inc., C-Automation OPS, LLC, and Michael Gould filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relators ask this court to compel the Honorable Kristen Brauchle Hawkins, presiding judge of the 11th District Court of Harris County, to, first, vacate the trial court's March 6, 2024 order granting a motion to compel discovery of documents that relators

claim are trade secrets and to grant relators protection from the discovery request. Second, relators ask this court to compel the trial court to: (1) vacate the trial court's March 1, 2024 order denying relators' motion to compel discovery of documents relating to real party in interest Apex Manufactured Solutions, LLC's formation, operation, as well as its financial books and records; (2) vacate the trial court's March 1, 2024 order granting a protective order of these documents; and (3) grant relators' motion to compel discovery of these documents.

We conditionally grant the petition for writ of mandamus in part and order the trial court to vacate its March 6, 2024 order compelling discovery of relators' trade secrets and to grant relators protection from the discovery request. We deny relators' requested relief as it relates to the trial court's March 1, 2024 order. We decline to order the trial court to vacate its order denying relators' discovery request and its order granting a protective order of these documents. We further deny relators' request to compel discovery of the documents at issue in the March 1, 2024 order.

## Background

Real parties in interest Tiago Salies, Annie Mauldin, and Bryan Kelley previously worked at relator C-Automation OPS, LLC, (C-OPS). The real parties in interest, Salies, Mauldin, and Kelley, left C-OPS and began work at a new company, real party in interest Apex Manufactured Solutions, LLC (Apex). The underlying lawsuit involves claims of breach of fiduciary duty, fraud and fraud in the inducement, breach of contract, and tortious interference among other claims.

This mandamus petition involves two discovery orders in the underlying suit. First, relators claim the trial court abused its discretion when it granted a

motion to compel discovery of documents relators claim are trade secrets. Second, relators claim the trial court abused its discretion when it denied relators' motion to compel discovery of documents related to real party in interest's formation, operation, as well as and financial books and records, and granted real parties in interest protection from these requests. Further, relators allege they lack an adequate remedy on appeal and require mandamus relief.

## Standard of Review

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re 4X Indus., LLC*, 639 S.W.3d 801, 807 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding) (citing *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding)). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *4X Indus., LLC*, 639 S.W.3d at 807 (citing *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302-03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam)). The relator must establish that the trial court could reasonably have reached only one decision. *4X Indus., LLC*, 639 S.W.3d at 807. (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Appeal is not an adequate remedy when the appellate court would not be able to cure the trial court's discovery error on appeal. *4X Indus., LLC*, 639 S.W.3d at 807 (citing *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (per curiam)).

**Analysis**

## I. Motion to Compel Request for Production No. 16 and No. 17

Relators assert the trial court abused its discretion by denying a motion to compel discovery of two requests for production in its March 1, 2024 order:

- Request for Production No. 16: All communications and documents related to the formation of Apex

- Request for Production No. 17: All financial books and records of Apex

In a discovery context, situations in which a party will not have an adequate remedy on appeal from an erroneous ruling of a trial court include those where (1) the appellate court would not be able to cure the trial court's error, i.e., disclosure of trade secrets without adequate protection of confidentiality, (2) a party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's error, or (3) the reviewing court will be unable to evaluate the effect of a denial of discovery because the unproduced documents will not be part of the appellate record. *Bristol-Myers Squibb Co. v. Hancock*, 921 S.W.2d 917, 920 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding). In the second situation, it is not enough to show merely the delay, inconvenience or expense of an appeal. *Id.* Instead, the relator must establish the effective denial of a reasonable opportunity to develop the merits of his case, *i.e.,* denial of discovery going to the heart of his case, such that a trial of the case without it would be a waste of judicial resources. *Id.* Relators have not met this burden. Thus, we deny relators' request to compel the trial court to reverse its order denying discovery.

## II. Motion to Compel Request for Production No. 63, 64, and 66

Relators assert the trial court abused its discretion by granting real parties in interest motion to compel discovery of three requests for production, which relators claim contain trade secrets:

- Request for Production No. 63: Documents reflecting agreements between C-OPS and its customers

- Request for Production No. 64: Documents reflecting agreements between C-OPS and its vendors

- Request for production No. 66: Documents reflecting C-OP's customer lists

### A. Abuse of Discretion

"A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *4X Indus., LLC*, 639 S.W.3d at 807 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). Texas Rule of Evidence 507 creates a privilege to protect trade secrets. *See* Tex. R. Evid. 507. That rule provides:

> A person has a privilege to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, unless the court finds that nondisclosure will tend to conceal fraud or otherwise work injustice. Tex. R. Evid. 507(a)

The trade secrets privilege seeks to accommodate two competing interests. *4X Indus., LLC*, 639 S.W.3d at 807 (citing *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 612 (Tex. 1998) (orig. proceeding); *In re Cooper Tire & Rubber Co.*, 313 S.W.3d 910, 915 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding)). First,

5

it recognizes that trade secrets are an important property interest, worthy of protection. *4X Indus., LLC*, 639 S.W.3d at 807-08 (*citing Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 612.) Second, it recognizes the importance placed on fair adjudication of lawsuits. *Id.* at 808. Rule 507 accommodates both interests by requiring a party to disclose a trade secret only if necessary to prevent "fraud" or "injustice." *Id.* Disclosure is required only if necessary for a fair adjudication of the requesting party's claims or defenses. *Id.*

The party asserting the trade secrets privilege has the initial burden to prove that the information sought qualifies as a trade secret. *4X Indus., LLC*, 639 S.W.3d at 808 (citing *In re Bass*, 113 S.W.3d 735, 737 (Tex. 2003) (orig. proceeding)). If the resisting party meets its burden, the burden shifts to the party seeking the trade secret discovery to establish that the information is necessary for a fair adjudication of its claim. *Id. See also In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 613. ("We therefore hold that trial courts should apply Rule 507 as follows: First, the party resisting discovery must establish that the information is a trade secret. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims.") It is an abuse of discretion for the trial court to order production once trade secret status is proven if the party seeking production has not shown necessity for the requested materials. *4X Indus., LLC*, 639 S.W.3d at 808. *See Bass*, 113 S.W.3d at 738 ("If a trial court orders production once trade secret status is proven, but the party seeking production has not shown a necessity for the requested materials, the trial court's action is an abuse of discretion.")

## 1. Is it a Trade Secret?

Relators claim that request for production No. 63, No. 64, and No. 66 — which request documents reflecting agreements between C-OPS and its customers, documents reflecting agreements between C-OPs and its vendors and documents reflecting C-OPS customer lists, respectively — seek documents that are trade secrets. In support of its assertion, relators offer the affidavit of Gould, a relator and the manager of relator C-OPS.

To determine whether a trade secret exists, we weigh the following six factors in the context of the surrounding circumstances: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *4X Indus., LLC*, 639 S.W.3d at 808. The party claiming a trade secret is not required to satisfy all six factors because trade secrets do not fit neatly into each factor every time. *Id.* "Customer lists, pricing information, client information, customer preferences, buyer contacts. . .have all been recognized as trade secrets." *Sharma v. Vinmar Intern., Ltd.*, 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] 2007, no pet.)

### a. Factors 1, 3 and 6

The first factor evaluates the extent to which the information is known outside of the business. *4X Indus., LLC*, 639 S.W.3d at 808. The third factor considers the extent of measures taken to guard the secrecy of the information. *Id*.

7

The sixth factor is the ease or difficulty with which the information could be properly acquired or duplicated by others. *Id.*

- **Request for Production No. 63 and No. 64**

In Gould's affidavit, relators claim request for production No. 63, which demands documents reflecting agreements between C-OPS and its customers and No. 64, which demands documents reflecting agreements between C-OPS and its vendors are kept confidential. Gould avers, "[t]he agreements entered into with clients and vendors are also kept confidential as part of" relators' businesses. Factor 1 weighs in favor of request for production No. 63 and No. 64 being trade secrets, as confidentiality indicates this information is not known outside the business. As to factor 3, relators have shown that they took measures to guard the secrecy of the information. Regarding factor 6, because relators keep this information confidential, it would be difficult to properly acquire or duplicate it. As such, factors 1,3 and 6 weigh in favor of request for production No. 63 and No. 64 being trade secrets, because measures have been taken to guard the secrecy of the information such that it would be difficult to properly acquire the agreements between customers and vendors.

- **Request for Production No. 66**

Relators allege request for production No. 66, which requests documents reflecting C-OP's customer lists, is also kept confidential. In Gould's affidavit he avers, "over the last 19 years I have developed a network of clients to whom. . . C-OPs [has] provided services." He states that "[t]his data includes contact details, preferences, purchase history, and other relevant information. Keeping this list

8

confidential provides a competitive edge by preventing competitors from gaining access to critical business relationships."

Moreover, relators allege they have taken steps to ensure documents reflecting their customer lists are not disclosed outside the business. Gould states, "I have taken reasonable measures to keep the list of customers which I have developed over the last 19 years and utilized in my businesses from disclosure to anyone outside. . .C-OPS. These measures include limiting which employees can access certain protected information and requiring employees to enter into employment agreements which include non-compete, non-disclosure and confidentiality clauses." Factors 1, 3, and 6 weigh in favor of request for production No. 66 being trade secrets, as relators have shown that: the information is not known outside the business; relators have taken steps to guard the secrecy of the information; and it would be difficult to properly acquire client lists.

### b. Factor 2

The second factor looks at the extent to which it is known by employees and others involved in the business. *4X Indus., LLC*, 639 S.W.3d at 808.

- **Request for Production No. 63 and No. 64**

Relators neither argue in their petition nor provide information as to how request for production No. 63, which demands documents reflecting agreements between C-OPS and its customers or No. 64, which demand documents reflecting agreements between C-OPS and its vendors, are known by employees and others involved in this business. Consequently, factor 2 is neutral in considering whether requests for production No. 63 and No. 64 are trade secrets.

- **Request for Production No. 66**

With regard to request for production No. 66, relators detail the extent to which the discovery request seeking documents reflecting C-OP's customer lists, is known by employees and others involved in the business in Gould's affidavit. In his affidavit Gould provides, "I have taken reasonable measures to keep the list of customers which I have developed over the last 19 years and utilized in my businesses from disclosure to anyone outside. . .C-OPS. These measures include limiting which employees can access certain protected information and requiring employees to enter into employment agreements which include non-compete, non-disclosure and confidentiality clauses." Factor 2 weighs in favor of request for production No. 66 being trade secrets, as information related to customer lists is limited to certain employees.

### c. Factor 4

The fourth factor we consider is the value of the information to the business and to its competitors. *4X Indus., LLC*, 639 S.W.3d at 808.

- **Request for Production No. 63 and No. 64**

Relators claim that request for production No. 63, which demands documents reflecting agreements between C-OPS and its customers and No. 64, which demand documents reflecting agreements between C-OPS and its vendors, are valuable to its competitors. As set forth in Gould's affidavit, "[t]hese agreements contain sensitive and proprietary information, such as business methods, pricing strategies, technical specifications, and clarify expectations between parties involved in various business transactions." Gould further avers that "[i]t is crucial to maintain confidentiality to prevent competitors from gaining

10

access to this information." Thus, factor 4 weighs in favor of requests for production No. 63 and No. 64 of being trade secrets because it indicates the value of the information to competitors.

- **Request for Production No. 66**

Relators argue that request for production No. 66, which requests documents reflecting C-OP's customer lists, has value to its competitors. In an affidavit, Gould avers that "[i]f these contacts are revealed to a competitor my businesses would be severely harmed. [Relators'] client lists contain valuable information about existing and potential customers." Gould further provides that "[t]his data includes contact details, preferences, purchase history, and other relevant information. Keeping this list confidential provides a competitive edge by preventing competitors from gaining access to critical business relationships." As such, factor 4 weighs in favor of request for production No. 66 being trade secrets, as the client lists are valuable to relators' competitors.

### d. Factor 5

The fifth factor is the amount of effort or money expended in developing the information. *4X Indus., LLC*, 639 S.W.3d at 808.

- **Request for Production No. 63 and No. 64**

Relators provide no information indicating the amount of effort or money expended in developing the information requested by request for production No. 63 and No. 64. Hence, factor 5 is neutral in considering whether requests for production No. 63 and No. 64 are trade secrets.

- **Request for Production No. 66**

Relators maintain that they have expended considerable effort and money in developing the information requested by request for production No. 66. In his affidavit, Gould states that he spent 19 years developing the information requested. Factor 5 weighs in favor of request for production No. 66 being trade secrets, as relators has exerted effort to develop the client lists.

Relators provided evidence on most of the factors, they are not required to prove all six factors. *See id.* On balance, we conclude that relators have met their burden and established that requests for production No. 63, No. 64, and No. 66 are trade secrets. Consequently, the burden shifts to the real parties in interest, the party seeking the trade secret discovery, to establish that the information is necessary for a fair adjudication of their claim. *Id.*

## 2. Necessity

Whether the requested information is necessary to a fair adjudication of a party's claims depends on the nature of the information and the context of the case. *4X Indus., LLC*, 639 S.W.3d at 810. This showing requires more than general assertions of unfairness or merely that the information is relevant. *Id.* (*see In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex. 2003); *Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 613-14.) Real party in interest, as the party seeking production of the trade secrets, must make a "particularized showing" that the information is necessary to prove one or more material elements of its claim and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. *4X Indus., LLC*, 639 S.W.3d at 810. The party seeking trade secret information "cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on

the merits to the point that an unjust result is a real, rather than a merely possible, threat." *Id.* (*quoting In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732–33 (Tex. 2003)). This is a "heightened burden," and requires the requesting party to present evidence. *4X Indus., LLC*, 639 S.W.3d at 810.

Here, real parties in interest have failed to show necessity. Instead, they argue that requests for production No. 63, No. 64, and No. 66 are relevant to real parties in interest's "claims, causes of action, and affirmative defenses." Real parties in interest do not make a "particularized showing" that the information is necessary to prove one or more material elements of its claim and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. *See id. at* 810-14 (holding that to prove necessity, a party must show documents "are essential—as opposed to helpful— to a fair adjudication" of the claims). Rather, they argue that the documents they seek are "relevant" to their assertions that they are entitled to receive bonuses and their affirmative defenses. Assertions that the information is relevant is not sufficient to make the particularized showing necessary to prove necessity. *See In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d at 613-14 (Holding that Rule 507 "clearly contemplates a heightened burden for obtaining trade secret information" that is more than merely showing the information is relevant.) Further, real parties in interest argue these documents are relevant and necessary to their effort to determine "what belongs to C-OPs." However, they do not make the provide evidence to show how these documents are necessary to prove one or more material elements of its claims. Thus, real parties in interest have failed to meet their evidentiary burden to prove necessity, because have not shown how or why the requested documents prove up their claims.

13

Thus, the trial court abused its discretion in compelling the discovery of the information sought in request for production Nos. 63, 64, and 66, as the requests seek trade secrets. *See 4X Indus., LLC*, 639 S.W.3d at 813-15 (holding that the trial court abused its discretion in compelling documents where the real party in interest did not make "the required 'particularized showing' that the information sought is necessary to establish its claim for trade secret misappropriation."); *see also In re Waste Mgmt. of Tex., Inc.*, 286 S.W.3d 615, 618 (Tex. App.—Texarkana 2009, orig. proceeding) (holding that the trial court erred by ordering production of trade secret information when plaintiffs did not offer any evidence showing that such information was necessary to fair adjudication of claims).

## B.    No Adequate Remedy on Appeal

When an abuse of discretion exists, we must next determine whether the party resisting trade secret discovery has an adequate appellate remedy. The Supreme Court of Texas has held that no adequate appellate remedy exists if a trial court orders a party to produce privileged trade secrets absent a showing of necessity. *In re Bass*, 113 S.W.3d at 745. Because we have determined that the real parties in interest made no showing of necessity, there is no adequate remedy by appeal. *See id.* (holding that there was no adequate remedy by appeal where the real party in interest did not sufficiently show that trade secret data was necessary).

## C.  Right to Inspect Records

Real parties in interest, Salies, Mauldin, and Kelley (former employees), remain members of the relator C-OPS, a limited liability company (LLC). The former employees allege that as members of C-OPS, they have a right to inspect the documents held by C-OPS at issue in Request for Production No. 63, No. 64,

and No. 66. Thus, real parties in interest argue the trial court did not abuse its discretion in granting their motion to compel these documents.

However, the standard that members of an LLC must meet to enforce a right to inspect that LLC's books and records is distinguishable from the standard by which trade secrets are made discoverable. *See* Tex. Bus. Orgs. Code Ann. § 101.502(a); *4X Indus., LLC*, 639 S.W.3d at 807-08. In the case at hand, the former employees utilize a discovery vehicle — a motion to compel — to enforce their right to inspect the records, instead of meeting the standard set out in the Texas Code of Business Organizations to carry out their right to inspect the records.

## 1. Texas Business Organization Code

The Texas Business Organization Code gives members of an LLC the right to inspect records of that LLC if certain conditions are met. *See* Tex. Bus. Orgs. Code Ann. § 101.502(a).

> "A member of a limited liability company or an assignee of a membership interest in a limited liability company, on written demand stating a proper purpose, is entitled to examine and copy. . .any records of the limited liability company, whether in written or other tangible form, which are reasonably related to and appropriate to examine and copy for that proper purpose." Tex. Bus. Orgs. Code Ann. § 101.502(a)

To enforce the right to inspect books and records, a member of an LLC must plead for declaration of "rights to access the books and records." *see Gilbreath v. Horan*, 682 S.W.3d 454, 524-526 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (Holding that when a member of an LLC is "denied access repeatedly" to books and records under § 101.502(a), she "had to file suit to obtain

the information," requesting "a declaration that she has the right to access the books and records of the Limited Partnerships and General Partners both under the Partnership Agreements and Texas law."); *see also In re Elusive Holdings, Inc.*, 641 S.W.3d 498, 501 (Tex. App.—Austin 2021, orig. proceeding.) ("A shareholder enjoys the right to examine and copy certain records of the corporation in which the shareholder owns shares.") That right exists by statute, *see* Tex. Bus. Orgs. Code Ann. § 21.218(b), and at common law, *see Texas Infra–Red Radiant Co. v. Erwin*, 397 S.W.2d 491, 493 (Tex. App.—Eastland 1965, writ ref'd n.r.e.). A shareholder may press that right through a civil action for mandamus in a trial court. *Uvalde Rock Asphalt Co. v. Loughridge*, 425 S.W.2d 818, 820 (Tex. 1968) (orig. proceeding). Once pled, a jury can sometimes determine whether the member seeking the records has a proper purpose. *See Elusive Holdings, Inc.*, 641 S.W.3d at 501. The party resisting the records inspection "enjoys the right to a jury trial on 'proper purpose' under certain conditions, including that it has pleaded facts sufficient to raise an issue on 'proper purpose.'" *Id.*

Here, real parties in interest did not plead a right to inspect the records at issue in Request for Production No. 63, No. 64, and No. 66. Thus, they did not meet the threshold standard to enforce their right to inspect the records at issue.

### 2. The Rules of Evidence

Instead, the real parties in interest pursued a discovery tool, a motion to compel, to enforce their right to inspect the records. The scope of discovery extends to any unprivileged information that is "relevant to the subject matter" of the pending action, even if inadmissible at trial, so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 808 (Tex. 2017).

The Texas Rules of Evidence establish a privilege to protect trade secrets. *See* Tex. R. Evid. 507. The party asserting the trade secrets privilege has the initial burden to prove that the information sought qualifies as a trade secret. *4X Indus., LLC*, 639 S.W.3d at 808. If the resisting party meets its burden, the burden shifts to the party seeking the trade secret discovery to establish that the information is necessary for a fair adjudication of its claim. *Id.* It is an abuse of discretion for the trial court to order production once trade secret status is proven if the party seeking production has not shown necessity for the requested materials. *Id.*

Thus, the standard to enforce record inspection under Texas Business Organization Code section 101.502(a) is distinct from the mechanism in place to defeat a trade secret privilege under the Texas Rules of Evidence. Real parties in interest failed to meet either standard.

**CONCLUSION**

Because the trial court abused its by compelling relators to respond to discovery seeking trade secrets, we conditionally grant in part relators' petition for writ of mandamus and direct the trial court to vacate its March 6, 2024 order compelling discovery in response to request for production No. 63, No. 64, and No. 66 and order the trial court to grant relators' protection from these requests. We deny relators' request to compel the trial court to vacate its March 1, 2024 order denying requests for production No. 16 and No. 17. We deny relators' request to compel the trial court to vacate its March 1, 2024 order granting a protective order of these documents. Finally, we deny relators' request to compel the trial court to grant its motion to compel requests for production No. 16 and No. 17. The writ will issue only if the trial court fails to act in accordance with this opinion. We lift this court's March 27, 2024 stay order.

17

/s/    Randy Wilson
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.